## BRANCH v. JESUP.

1. The South Georgia and Florida Railroad Company having power, by its charter, to construct a railroad from Albany to Thomasville, Georgia, and from Thomasville to the Florida line, and to purchase and sell all kinds of property of every nature and quality, and to incorporate its stock with that of any other company, contracted with the Albany and Gulf Railroad Company to construct its road from Thomasville to Albany, and to sell and deliver it to the latter company in sections as completed, together with the franchise of using the same, and to incorporate its stock created for building said road with that of the Albany and Gulf Railroad Company. The latter had the same general power, except that of incorporating its stock with the stock of other companies, and had the right under its charter to construct a railroad from Thomasville to Georgia. *Held*, that the contract was not *ultra vires*, and that the latter company could lawfully make the purchase, and pay for the same by issuing its own stock therefor; which was delivered to and accepted by the contractors in lieu of the stock of the other company, which latter stock they had subscribed for and agreed to take in payment for the work of construction.

2. A railroad company having the right of constructing a particular line of railroad, with general power to purchase all kinds of property of whatever nature or kind, may purchase from another company a road constructed upon that line, if the latter company had power to sell and dispose of the same.

3. As a general rule, a corporation cannot transfer its franchises, nor a railroad company its road, without legislative authority.

4. Prior to the purchase, the Albany and Gulf Railroad Company had executed a trust deed by way of mortgage upon all its railroad and property acquired or to be acquired. *Held*, that inasmuch as the road purchased was within the chartered limits of the company, and might have been constructed if it had not been purchased, the mortgage extended to and covered it as effectually as if the company had constructed it.

5. The contractors who built the road and accepted in payment therefor the stock, and the assignees and purchasers of the stock, after the transaction between the two companies had been carried into effect and the road possessed and operated by the Atlantic and Gulf Railroad Company for several years, are estopped from claiming the right to be regarded as stockholders of the South Georgia and Florida Railroad Company, or as preferred creditors as against the road. Having voluntarily accepted the position of stockholders of the purchasing company, they cannot question the validity of the transaction adversely to it, or to the mortgage given by it, covering the road in question.

6. The stock thus issued and accepted was preferred stock, on which interest was payable. *Held*, that the holders thereof, and their assigns, having accepted it, and received interest on it for several years, are estopped from questioning the power of the company to issue it.

7. The South Georgia and Florida Railroad Company having received the stipulated consideration, and incorporated its stock with that of the Albany

and Gulf Railroad Company, by accepting the stock of that company, and being in fact amalgamated therewith so far as the road in question is concerned, has no ground to complain that the terms of the contract have not been fulfilled by that company. It has lost nothing; and the liability which it incurred is protected by first liens on the road, the priority of which is conceded by all parties.

APPEAL from the Circuit Court of the United States for the Southern District of Georgia.

The facts are stated in the opinion of the court.

*Mr. William W. Montgomery* for the appellants.

*Mr. Walter S. Chisholm* and *Mr. Alexander R. Lawton* for the appellees.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This case arises upon a bill filed by Morris K. Jesup, as surviving trustee, for the foreclosure of a deed of trust in the nature of a mortgage, bearing date Dec. 20, 1867, given by the Atlantic and Gulf Railroad Company of Georgia to said Jesup and one Gardner (since deceased) to secure the payment of certain bonds of the company to the amount of $2,000,000 payable in 1897 with interest. The bill was filed Feb. 15, 1877, and on the 19th of the same month receivers were appointed to take charge of the mortgaged property, being the railroad of the company with its rolling-stock and machinery. A supplemental bill was filed on the 20th of April, 1877. The only defendant named in either bill was the Atlantic and Gulf Railroad Company. The premises sought to be foreclosed and sold were, *first*, the main line of the company's road, extending from Savannah southwesterly and westerly to Bainbridge, in Georgia, a distance of about two hundred and thirty-seven miles; *secondly*, a branch road, extending from Dupont to the Florida line, about thirty-two miles, connecting, *thirdly*, with a short road in Florida, extending to Live Oak in that State, which the company held and operated under a lease; *fourthly*, a branch road about fifty-eight miles in length, extending from Thomasville, on the main line, northerly to Albany, Georgia; *fifthly*, two other small branches at Savannah, one connecting the main line with wharves on the Savannah River, and the other connecting it with the Savannah and Charleston Rail-

road.   The Thomasville branch was purchased from the South
Georgia and Florida Railroad Company in 1868 (shortly after
the giving of the mortgage in suit) for the purpose of extend-
ing the line to Albany; which branch was subject to certain
bonds and mortgages issued by the latter company, having a
lien paramount to the mortgage in suit.   The other branches
were, in like manner, severally subject to certain prior mort-
gages, given for purchase-money or construction, and having a
paramount lien.   The bill conceded the priority of these several
liens.

The defendant answered, specifying the liens on its property
prior to that of the mortgage, and insisting that. it would be
inequitable to foreclose and sell at that time, although consent-
ing to the appointment of receivers.

On the 22d of April, 1878, Branch, Sons, & Co. and others
(who are appellants here) petitioned for, and obtained, leave
to intervene *pro interesse suo*, claiming to be preferred credit-
ors of the Atlantic and Gulf Railroad Company as to the pro-
ceeds and earnings of the South Georgia and Florida Railroad;
that is, the branch from Thomasville to Albany.   By amend-
ment to the petition the South Georgia and Florida Railroad
Company was also made a party, and a prayer was added to
have declared void the sale of the said branch road, and for
its restoration to the South Georgia and Florida Railroad
Company.

By their petition of intervention the appellants insisted that
the lien of the mortgage sought to be foreclosed does not cover
the branch aforesaid: that the petitioners and others are hold-
ers of certificates of special guaranteed seven per cent stock
of the Atlantic and Gulf Railroad Company to the amount of
some $300,000, of which the petitioners own $56,100; that
these certificates were issued by the Atlantic and Gulf Railroad
Company under a contract with the South Georgia and Florida
Railroad Company, dated January, 1869, for the construction
of its road from Thomasville to Albany; a copy of which con-
tract and certain modifications of it, and a copy of one of the
certificates, were annexed to the petition.   The petitioners
further contended that the earnings of that branch road, if
kept by themselves, would be sufficient, not only to pay the

interest on the preferred bonds of the South Georgia and
Florida Railroad Company, but to pay the interest on said
certificates; that the guaranteed scrip was given for the pur-
chase of the South Georgia and Florida Railroad, and was dis-
tributed among the contractors who built it in payment for
their labor; that it is in effect the promissory notes of the
Atlantic and Gulf Railroad Company, and that the holders
could proceed by attachment if the property of that company
were not in the hands of receivers; and, after making further
averments as to the solvency of the South Georgia and Florida
Railroad Company, if it stood alone, unconnected with the
Atlantic and Gulf Railroad Company, the petitioners prayed,
for themselves and the other holders of certificates, to be ex-
amined *pro interesse suo*, touching their alleged paramount
claim upon the proceeds of the South Georgia and Florida
Railroad after payment of interest on its bonds, and for an
order directing such examination before the master, and for
other directions.

In the amended petition the petitioners averred that the
original holders of the certificates of preferred stock before
mentioned were subscribers to the capital stock of the South
Georgia and Florida Railroad Company, and paid their sub-
scriptions by work done on the road, for which they received
the said certificates of preferred stock in the Atlantic and Gulf
Railroad Company, and that the present holders are *bona fide*
purchasers of said scrip, except in some instances where the
original holders have not parted with their scrip; and they
alleged that when the contracts between the two companies
were executed it was supposed that they had power to enter
into the same; but that they are now advised that the contracts
were *ultra vires*, and void, and they prayed a rescission and
cancellation thereof: but if the court should decree that the
contract only amounted to a lease of the road (which they
conceded would not be *ultra vires*), then they prayed that it
may be rescinded for non-compliance with its terms, and the
inability of the Atlantic and Gulf Railroad Company to com-
ply therewith. But if the court should think there was a valid
contract of sale, then they repeated their prayer to be decreed
to have a first lien on the proceeds of the road after the mort-

gages executed thereon by the South Georgia and Florida Railroad Company, and for a separate sale of that road subject to said mortgages.

The first contract referred to in the petition bore date June 19, 1868, and provided that the South Georgia and Florida Railroad Company should complete its road from Thomasville to Albany, and turn it over in sections, as completed, to the Atlantic and Gulf Railroad Company, and that when completed to Albany, the stock of the South Georgia and Florida Railroad Company should be incorporated with the stock of the Atlantic and Gulf Railroad Company, and that interest at the rate of seven per cent per annum on the actual cost of the road should be paid as well before such incorporation of stock, as on said stock after its incorporation; and that when the stock should be thus incorporated, all the rights, privileges, and franchises of the South Georgia and Florida Railroad Company, so far as related to the road from Thomasville to Albany, should vest in the Atlantic and Gulf Railroad Company, and said road should be a branch of the Atlantic and Gulf Road. This contract was modified by another contract made Jan. 15, 1869, which recited that the legislature of the State had passed an act authorizing the State to indorse the bonds of the South Georgia and Florida Railroad Company to the amount of $8,000 per mile; and that the Atlantic and Gulf Railroad Company consented to the issue of said bonds, and a first mortgage to secure them, and guaranteed their payment; and it was stipulated that the amount of said bonds should be deducted from the amount of preferred stock to be issued to the South Georgia and Florida Railroad Company for the construction of the road. Another agreement, made Sept. 1, 1869, authorized the further issue of bonds by the South Georgia and Florida Railroad Company to the amount of $200,000, to be secured by a second mortgage on the road, and guaranteed by the Atlantic and Gulf Railroad Company.

The road appears to have been completed to Albany prior to October, 1870. On the 10th of that month the following resolution was passed by the Board of Directors of the South Georgia and Florida Railroad Company: —

" Whereas the South Ga. & Fla. Railroad Company entered into an agreement with the Atlantic and Gulf Railroad Company, on the nineteenth day of June, 1868, by which a transfer of the said South Georgia and Florida Railroad was to be made (that is, all of said road between Thomasville and Albany) upon certain conditions therein stipulated, all of which will more fully appear by reference to said agreements; and whereas the South Georgia and Florida Railroad has been completed to East Albany and the same has been turned over to the Atlantic and Gulf Railroad Company, and which is now being operated by said Atlantic and Gulf Railroad Company; and whereas the president of the Atlantic and Gulf Railroad Company has signified his willingness to receive said road finished to East Albany; and whereas the South Georgia and Florida Railroad Company have made up the entire cost of said road and made affidavit certificate under oath as prescribed by said agreement: *It is therefore resolved,* that the president of this road proceed to Savannah, submit his estimates and certificates, and demand and receive the guaranteed stock agreed to be given to the South Georgia and Florida Railroad stockholders under said agreements in terms of the several agreements made by the South Georgia and Florida Railroad Company with said Atlantic and Gulf Railroad Company. *Resolved, further,* that the president be, and he is hereby, authorized to make, execute, and deliver all papers necessary to carry out and fulfil said agreements for a transfer of so much of said South Georgia and Florida Railroad as lies or is located between Thomasville and Albany, specially reserving the other franchise or rights of building and equipping a railroad from Thomasville to the Florida line under the charter of the South Georgia and Florida Railroad Company."

This resolution was duly carried into effect shortly after its adoption, as appears by a final contract executed in due form between the companies, bearing date Jan. 8, 1876, which recited the several prior contracts, and the said resolutions, and the fact of their acceptance and of the performance and fulfilment of the same, and by which the South Georgia and Florida Railroad Company made a formal conveyance to the Atlantic and Gulf Railroad Company, its successors and assigns, forever, of so much of the South Georgia and Florida Railroad as lies or is located between Thomasville and Albany, with all the appurtenances thereof, including the franchises of the South

Georgia and Florida Railroad Company, to construct and use the same.

The certificates of stock issued by the Atlantic and Gulf Railroad Company in pursuance of said contract were regular scrip certificates for preferred stock in that company, in the following form: " Atlantic & Gulf Railroad, Georgia: — Special guaranteed seven per cent. stock issued under a contract with the South Georgia & Florida Railroad Company, bearing date Jan. 2d, 1869, for the construction of the South Georgia & Florida Railroad: — This is to certify that Branch & Sons or bearer is entitled to sixty-six shares, on which the par value of 100 dollars has been paid, of the special stock of the Atlantic & Gulf Railroad Company, on which interest from date is perpetually guaranteed at the rate of 7 p. c. per ann., payable semi-annually, &c. Witness, &c. Sealed, &c., first day of November, 1872. (Signed) John Scriven, president: Attest, D. Macdonald, secretary."

No evidence was taken in the case, and the hearing was had on bill and answer. It was conceded, or, at least, not controverted, that the intervenors were holders of the stock certificates as claimed in their petition, and that said certificates originated in the manner and in fulfilment of the contracts therein set forth.

The court below denied the prayer of the intervenors and dismissed the petition; and went on to make a final decree in the cause, ordering a foreclosure and sale of the railroad of the Albany and Gulf Railroad Company, with all its branches, including the branch from Thomasville to Albany, subject, however, to all prior mortgage liens, including the first and second mortgages on the Thomasville branch. From this decree the intervenors have appealed.

The questions raised by the appellants, as stated in their brief, are as follows: —

1st, Was the sale of a part of the South Georgia and Florida Railroad and its franchises to the Atlantic and Gulf Railroad void as against public policy and *ultra vires?*

2d, If not, did the contract amount to anything more than a lease?

3d, If it was a sale, are not the South Georgia and Florida

Railroad Company and other intervenors vendors with the pur-
chase-money unpaid, and hence entitled to assert their right of
attachment upon the property sold, in preference to the claims
of the mortgage creditors of the vendee, the Atlantic and Gulf
Railroad Company?

4th, If the intervenors are not entitled to attach as vendors,
are they not *creditors* of the Atlantic and Gulf Railroad Com-
pany, and entitled to be paid out of property of the debtor
which is not covered by the mortgage; and in this case does
the mortgage cover the South Georgia and Florida Railroad?

If only stockholders, can they not object to the sale of the
South Georgia and Florida Railroad under the present pro-
ceedings?

The court below was of opinion that the sale and purchase
of the road was not void, nor *ultra vires* of the two contracting
companies, without examining the question of the right of the
appellants to contest the validity of the transaction. We will
proceed to give some examination to that question.

The appellants are stockholders of the Atlantic and Gulf
Railroad Company. Their stock is a preferred stock, it is true,
entitling them to interest on its face before any dividends can
be made to the common stockholders. But this is not incon-
sistent with its being stock. It is a very common thing in this
country to issue stock of this kind. The interest accruing
thereon is in the nature of a preferred dividend, and is some-
times so called. Though after it has accrued it may become a
debt, so also does a dividend become a debt after it has been
declared and has become payable. It has no priority over
other debts, if, indeed, it has an equality with them. And this
position, as stockholders of the Atlantic and Gulf Railroad
Company, was voluntarily assumed by the appellants. This is
true both of those who purchased their stock at second hand
and of those who originally received the stock. They proba-
bly deemed it to their interest to accept payment for their
work in this form. But again: not only are they stockholders
in the Atlantic and Gulf Railroad Company, but the accept-
ance of the stock was an acknowledgment of the validity of
the contract between the two companies. The issue of the
stock was in part performance of that contract, and this ap-

pears upon the face of the certificates. After thus acquiescing
in the purchase by the Atlantic and Gulf Railroad Company
of the branch railroad in question, and of the amalgamation of
stock incident to said purchase; and after the possession and
use of said road and its franchises by the said company as a
part of its road-system for a period of several years, the appel-
lants are estopped from questioning the validity of said transac-
tion, and cannot now repudiate their character of stockholders
of the Atlantic and Gulf Railroad Company, and assume that
of stockholders of the South Georgia and Florida Railroad
Company. To sustain such a course on their part would have
the effect of ripping up and unravelling a thousand transactions
which have taken place on the basis of the purchase and amal-
gamation referred to. Whatever right the State may have to
inquire into the validity of such purchase and amalgamation,
certainly the appellants have no right in law or in equity to
question it. In law, they are stockholders of the purchasing
company, in which character they neither can, nor do, ask any
relief; in equity, they are participators in the face of all the
world in a transaction which is conceded to have been fair and
supposed to be lawful at the time, and upon the faith of which
numberless transactions in business, and in the stock and bonds
of the purchasing company, have undoubtedly been entered
into. To give to the appellants relief in any form in which it
is asked, would be attended with injury and injustice to others
who have innocently confided in the acts of the appellants and
their associates.

    We might safely stop here and affirm the decree below on
this consideration alone. But as our view of the other ques-
tions which have been raised leads to the same result, it may
be proper to state the reasons therefor.

    The first relates to the power of the two companies to enter
into the arrangement for the sale and purchase of the Thomas-
ville branch. The power of the South Georgia and Florida
Railroad Company to sell the road depends upon its charter,
which took its origin in an act of the legislature approved Jan.
22, 1852, creating the Georgia and Florida Railroad Company,
with power to construct a railroad from Oglethorpe, or some
other point on the Southwestern Railroad, to Albany; also

with power to construct a railroad from Albany to Thomas-
ville, and from thence to the Florida line in the direction of
Tallahassee; also a plank or macadamized road in connection
with the railroad; and for the purpose of constructing said
road or roads, procuring right of way, and managing all its af-
fairs, the said company was invested with the same powers and
privileges granted to the Savannah and Albany Railroad Com-
pany, not inconsistent therewith; and it was enacted that the
said Georgia and Florida Railroad Company might at any time
incorporate their stock with the stock of any other company on
such terms as might be mutually agreed upon.   The company
was further authorized, from time to time, to determine the
amount of stock necessary to carry out its purposes and the
construction of said road or roads.   The powers given in this
charter by adoption and reference to the charter of the Savan-
nah and Albany Railroad Company consisted, as expressed in
the charter of the latter company, of all the rights, privileges,
and immunities which by the laws of Georgia were held or
enjoyed by any incorporated railroad company or companies in
the State; and by a reference to prior existing charters we find
that, so far as relates to the question in hand, these powers
were, "To have, purchase, possess, enjoy, and retain lands,
rents, hereditaments, tenements, goods, chattels, and effects, of
whatsoever kind, nature, or quality the same may be, and the
same to sell, grant, demise, alien, or dispose of."

All the powers thus given to the Georgia and Florida Rail-
road Company in 1852 were conferred upon the South Georgia
and Florida Railroad Company by an act passed Dec. 22, 1857.
By this act the South Georgia and Florida Railroad Company
was created, and the line of road which the Georgia and Flor-
ida Company was authorized to construct from Albany to
Thomasville, and thence to the Florida line, was separated
from the rest and granted to the South Georgia and Florida
Railroad Company, which company was invested with the
usual powers to purchase, hold, and convey property, real and
personal, and with specific power to construct a railroad from
Albany "to Thomasville," "and from Thomasville to any
point on the Florida line," and to connect with any other road
at such points as they should deem best; and it was enacted

" that the provisions of the act incorporating the Georgia and Florida Railroad Company, so far as applicable, shall be applied to said South Georgia and Florida Railroad Company." By reference and adoption, therefore, the latter company became invested with all the authority and power, in regard to the line between Albany and Thomasville, and between Thomasville and the Florida line, which had been conferred upon the Georgia and Florida Railroad Company. It seems to us clear that these powers were sufficient to enable the company to sell its road and franchises to any company competent to purchase them. As a general rule, it is true, a railroad company, with only the ordinary power to construct and operate its road, cannot dispose of it to another company. Legislative aid is necessary to that end. But this company had, by its charter, express power to incorporate its stock with the stock of any other company. This power has an enlarging effect upon the ordinary power to sell and dispose of property belonging to the company. Generally the power to sell and dispose has reference only to transactions in the ordinary course of business incident to a railroad company ; and does not extend to the sale of the railroad itself, or of the franchises connected therewith. Outlying lands, not needed for railroad uses, may be sold. Machinery and other personal property may be sold. But the road and franchises are generally inalienable ; and they are so not only because they are acquired by legislative grant, or in the exercise of special authority given, for the specific purposes of the incorporating act, but because they are essential to the fulfilment of those purposes; and it would be a dereliction of the duty owed by the corporation to the State and to the public to part with them. But where, as in this case, power is given to incorporate the capital stock with the stock of any other company, a very large addition is made to the ordinary powers granted to a company. In this country, the creation and exercise of such a power is well understood. It contemplates not only the possible transfer of the railroad and its franchises to another company, but even the extinguishment of the corporation itself, and its absorption into a different organization. The greater power of alienating or extinguishing all its franchises, including its own being and exist

ence, contains the lesser power of alienating its road and the franchises incident thereto and necessary to its operation. Its power of alienation and sale extends to a class of subjects to which it does not ordinarily apply. In view of the large power thus conferred upon the South Georgia and Florida Railroad Company, we cannot doubt that it had full power to enter into the arrangement made with the Atlantic and Gulf Railroad Company for the transfer of that portion of its line extending from Albany to Thomasville, including the franchise of constructing and using the same, and an incorporation of all its stock issued for the construction of said road with the stock of the latter company.

It is true that the South Georgia and Florida Railroad Company did not part with its entire franchise. Power was given to it by its charter to construct a road from Thomasville to the Florida line (being a distance of about fifteen miles due south), and to connect with any other road at such points as it might deem best. But this extension is mentioned as a distinct enterprise, has never been entered upon, and would have no value without a connection with some railroad in Florida, for which, so far as appears, no authority has thus far been accorded by that State. The authority to make it is nominal only, if it has not entirely expired by lapse of time; and could be of little use to the Atlantic and Gulf Railroad Company, which had a connection of its own with the Florida system of railroads at Live Oak. The retention of this nominal franchise by the South Georgia and Florida Railroad Company, which has never issued any capital stock under it, or with a view to its use, seems to be in reality a mere shadow without any substance. All the capital stock which the company ever provided for was that which went to the building of the road from Thomasville to Albany, and that, at its very inception, was incorporated with the stock of the Albany and Gulf Railroad Company; the stock of the latter company being issued and accepted in the place of it. So that, in truth, the terms of the charter have been literally carried out. At all events, we think that the arrangement made with the latter company was within the powers given to the South Georgia and Florida Railroad Company; and this arrangement was fully assented

to and acquiesced in by every subscriber to its stock, as before mentioned.

In this connection, it is proper to notice a fact which has been referred to by the counsel of the appellants in support of his views, but which seems to us corroborative of the view which we have taken of the powers of the South Georgia and Florida Railroad Company. The original route authorized to be taken by its parent company, the Georgia and Florida Railroad Company, extended, as we have seen, from Oglethorpe, or some other point on the Southwestern Railroad, to Albany, with authority also to construct a railroad from Albany to Thomasville, and from thence to the Florida line. Afterwards, as we have also seen, in December, 1857, the South Georgia and Florida Railroad Company was created, and that portion of the route extending from Albany southward to Thomasville and the Florida line was transferred to the latter company with all the general powers of the parent company, among which was the power to incorporate its stock with that of any other company. The northern part of the original route, extending from Albany northward to Americus, a point of connection with the Southwestern Railroad, still remained under the original charter; and this part (between thirty and forty miles in length) was afterwards transferred to the Southwestern Railroad Company with an incorporation of stock, similar to what was done by the South Georgia and Florida Railroad Company with the southern part of the line. But it seems that the Southwestern Railroad Company had not sufficient unissued stock to pay for the road thus acquired. Whereupon an act was passed by the legislature " to amend the charter of the Southwestern Railroad Company and to authorize an increase of the capital stock of said company," &c., by which, after reciting the power given to the Georgia and Florida Railroad Company to incorporate its stock with the stock of any other company, further recited that the latter company had agreed with the Southwestern Railroad Company to incorporate its stock with the stock of that company, and had delivered its railroad running from Americus to Albany to the Southwestern Railroad Company, and had received stock of the said company to the amount of near $500,000, and that

it thereby became necessary to increase the capital stock of said Southwestern Railroad Company; it was therefore enacted that the latter company be authorized to issue stock in addition to the amount mentioned in its charter for any sum not exceding $500,000; and that the road from Americus to Albany should be considered part and parcel of the road of the Southwestern Railroad Company, and be liable to pay to the State the same tax that the rest of the Southwestern Railroad Company was liable to pay. This arrangement, which the legislature thus enabled the Southwestern Railroad Company to carry out (and in doing so recognized its validity), was precisely similar to that which had been made between the South Georgia and Florida Railroad Company and the Atlantic and Gulf Railroad Company in regard to the road from Albany to Thomasville. The only difference between the two cases was, that the Southwestern Railroad Company had to get power to issue additional stock, — a power which the Atlantic and Gulf Railroad Company did not need, as it already had authority to issue the amount of stock required for carrying out its arrangement with the South Georgia and Florida Railroad Company; at least, it is so stated, and is not denied, nor is the contrary alleged in any of the pleadings.

The point taken, in relation to the issue of stock by the Atlantic and Gulf Railroad Company in payment of the road purchased by it, is, not that the company had no power to issue that amount of stock, but that it had no power to issue preferred stock. But it hardly lies in the mouth of those who received this stock, and who for several years accepted the interest guaranteed to be paid thereon, to make this objection, especially as no other parties, neither the State nor the holders of the common stock, have ever objected to the issue of this preferred stock. Without entering, therefore, into a discussion of the abstract question whether a railroad company may not issue a preferred stock, when done in good faith, instead of issuing bonds to the same amount, it is sufficient to say that the appellants are not in a position to raise the question.

But, supposing it to be shown that the South Georgia and Florida Railroad Company had the power to sell, had the Atlantic and Gulf Railroad Company the power to buy the road

in question? The latter company was formed by the amalgamation of two distinct companies, and became invested with all the powers contained in the charters of both. These companies were, first, the Savannah, Albany, and Gulf Railroad Company, chartered in 1847 under the name of the Savannah and Albany Railroad Company; and, secondly, the Atlantic and Gulf Railroad Company, chartered in 1856. The first of these companies was authorized to construct a railroad communication between Savannah and Albany, by such route as the company might select, with such branch road towards the north and towards the south from said road to such point or points as they might deem requisite; with power, also, at any time, to extend said road to any point or points on or across the Chattahoochee River. Besides the ordinary corporate powers given to this company, it was invested, as already mentioned, " with all the rights, privileges, and immunities which by the laws of Georgia are held and enjoyed by any incorporated railroad company or companies." The Georgia Railroad and Banking Company had been chartered in 1835. Other railroad companies in Georgia, then in existence, had power " to have, purchase, receive, possess, enjoy, and retain lands, rents, tenements, hereditaments, goods, chattels, and effects of whatsoever kind, nature, or quality, and the same to sell, grant, demise, alien, or dispose of." See Charters of Georgia Railroad and Central Railroad, Prince's Digest, pp. 311, 326. The second of the companies consolidated as aforesaid, to wit, the Atlantic and Gulf Railroad Company, had power to construct a railroad from a point in Wayne County, southwest of Savannah, to the western boundary of the State south of Fort Gaines, being in a general westerly direction across the southern part of the State; but it was provided that the Savannah, Albany, and Gulf Railroad Company, as well as the Brunswick and Florida Railroad Company, might join their tracks with that of the Atlantic and Gulf Railroad Company. The latter company was invested with all the privileges, immunities, and exemptions granted to the Central and to the Georgia Railroad Companies, or either of them.

The two companies — Savannah, Albany, and Gulf, and Atlantic and Gulf — were consolidated under the name of the latter

company by virtue of an act passed in April, 1863, by which it was provided that " the several immunities, franchises, and privileges granted to said companies by their original charters, and the amendments thereof, and the liabilities therein imposed, shall continue in force."

From these charters and laws it appears that the consolidated company had power to construct a railroad from Savannah to the southwestern border of the State; and, amongst other things, to construct a railroad communication between Savannah and Albany, and to make branch roads towards the north and towards the south: and, even before the consolidation, the Savannah and Albany Company was authorized to join its track to that of the Albany and Gulf Company; so that the line of roads, as finally located, constructed, and acquired, including the branch from Thomasville to Albany, cannot be said to have departed in any respect from the strict course pointed out and designated by the charters of the consolidated companies. The main line commences at Savannah, under the charter of the Savannah and Albany Company, and runs southwesterly to Wayne County, and thence, under both charters (for both companies were authorized to use the same track), westwardly to Thomasville and Bainbridge, in the southwestern part of the State, with a branch running from Dupont towards the south into Florida, and a branch from Thomasville towards the north to Albany, forming a railroad connection between Savannah and Albany. In making the railroad connection between Savannah and Albany, the original charter of the Savannah and Albany Railroad Company could not be construed to require that this connection should be made by a rigidly straight line. The directors were invested with reasonable discretion as to the route to be taken; and since the subsequent legislation expressly authorized the Savannah and Albany Company to join its track with that of the Albany and Gulf Railroad Company, it is clear that the line of the latter company was not regarded as an improper departure from that of the former. Indeed, by an act passed in 1857, the Albany and Gulf Railroad Company were required to get the release of the Savannah and Albany Company of its right of way over the line of its contemplated road, before it could have

the State subsidy proposed to be given to it; which plainly shows that the line of the Albany and Gulf road (which properly lay through Thomasville) was regarded as within the fair limits of the route granted to the Savannah and Albany Company. This being so, the branch road from Thomasville to Albany was fairly within the power and authority given to the Savannah and Albany Company by its original charter, to establish a railroad connection between Savannah and Albany.

Then, since the consolidated company had authority to construct a railroad from Thomasville to Albany, and to establish the railroad connection between Savannah and Albany in that way, and had the general power to purchase and receive property of every conceivable kind, nature, or quality (limited, of course, by the general objects of its charter), what was to hinder its purchasing from the South Georgia and Florida Railroad Company its line of road between Thomasville and Albany, and paying for it by the issue of its own stock, — an arrangement which, as we have seen, the South Georgia and Florida Railroad Company, on its part, had a perfect right to make? It seems to us that this question is not hard to answer; but that it is clear that the one company had the right to purchase this road as fully as the other company had the right to sell it; and that the right of both was fully given by the charters and laws which gave them their respective powers.

We do not mean, in the slightest degree, to disaffirm the general rule, that a corporation cannot dispose of its franchises to another corporation without legislative authority. But we think that the authority clearly existed in this case, being fairly derived from the legislation which affected the two companies, without any forced or strained construction of its terms.

The second question raised by the appellants, namely, whether the contract amounted to anything more than a lease, has been sufficiently answered by what has already been said. The transaction between the companies had in view a transfer of the entire interest of the South Georgia and Florida Railroad Company.

The third question raised is, whether the South Georgia and Florida Railroad Company and the other intervenors are not vendors whose purchase-money is unpaid, and who are thence

entitled to assert a right of attachment upon the property in preference to the claims of the mortgage creditors of the Atlantic and Gulf Railroad Company, the vendee? The original intervenors are certainly not entitled to assume any such position. As already shown, their *status* is fixed by their own choice, as stockholders of the Atlantic and Gulf Railroad Company. They are such, and nothing more, except as to the interest due on their stock, as to which they are nothing more than general creditors. As to the South Georgia and Florida Railroad Company, it has no claim at all. It received all that it stipulated for. The priority of its bonds and mortgages is fully conceded; and its stock, so far as the railroad in question is concerned, was incorporated with that of the Atlantic and Gulf Railroad Company, with which it became amalgamated and identified. Its separate existence *pro tanto* became merged in the latter company. How far it can ever be galvanized into new life for the purpose of the extension of the road from Thomasville to the Florida line, it is not necessary to inquire. That question has nothing to do with the one now in hand.

The only remaining question is, whether the deed of trust or mortgage given by the Atlantic and Gulf Railroad Company to the complainant and his co-trustee covers the railroad in question. In terms it covers and pledges the entire railroad of the Atlantic and Gulf Railroad Company in Georgia, constructed, or to be constructed, from Savannah to Bainbridge, or to and from any other points in the State of Georgia, with its appurtenances, with all rights of way acquired, or thereafter to be acquired or obtained, and all rolling-stock and machinery acquired, or to be thereafter acquired, and all franchises, rights, and privileges connected with or relating to said railroad, or the construction, maintenance, or use thereof. Under the settled rule in regard to the operation of railroad mortgages on after-acquired property, where the terms of the instrument extend to such property, there can be no question that the mortgage in this case did extend to and cover any portion of road belonging to the company and authorized by its charter, which was constructed after the mortgage was given. The only question here is, whether the railroad from Thomasville to Albany is fairly within this category. We have already seen that the

company had the power to construct this line; that it was within its chartered limits. There can be no doubt, therefore, that if the road had been constructed by the company without any reference to the South Georgia and Florida Railroad Company, it would have fallen directly within the operation of the rule in question. Instead of constructing it directly, the Atlantic and Gulf Railroad Company procured its construction through, and by arrangement with, and purchase from, the South Georgia and Florida Company. Can this make any difference? When constructed, the road became part of the system of roads of the Atlantic and Gulf Railroad Company, as much so as if it had constructed it independently. A road purchased as and for a part of its chartered line is no less a part of its proper road than one built for that purpose. Provision was made, it is true, in the contract between the companies, for a prior lien in favor of the mortgages separately placed upon the road thus acquired. That lien is conceded to be valid and binding. But subject thereto, the mortgage given to the complainant properly extends to and covers this road as part of the entire line of the company. It is embraced in the terms of the mortgage, and is in law subject to its operation. It is part of the lawfully acquired property of the Atlantic and Gulf Railroad Company, — acquired under its chartered rights and powers. It is the property of no other company. It is subject to the debts of no other company, except those which attached to it by virtue of the superior mortgage liens before mentioned. The appellants, as stockholders of the company, equally with the company itself, are bound by the mortgage. Their claims are inferior and subject to it. Their position as general creditors, in regard to any interest due them, is equally inferior. They have no equity that can prevail against it.

The appellants have suggested several subsidiary points which, regard being had to the views we have already expressed, cannot affect the result. One point is that the charter of the South Georgia and Florida Railroad Company expired in 1872, before the execution of the final deed to the Atlantic and Gulf Railroad Company. We do not understand that the charter expired at that time, but only that the time limited for the construction of the road expired. If the charter expired, how did the com-

pany become a party to this suit? But even if the charter did expire, the road was finished and in possession of the Atlantic and Gulf Railroad Company in 1870, and the entire transaction was then completed. The conveyance executed in 1876 was merely carrying out in form what was already completed and carried out in substance. But how can this objection avail the appellants in any view of the case? What right have they to object to the conveyance? Its only purpose was to carry out what they and all the parties concerned consented to and acquiesced in long before. And in their position, as stock-holders of the Atlantic and Gulf Railroad Company, it does not lie in their mouths to object that the South Georgia and Florida Railroad Company unlawfully exercised corporate powers, when it completed the performance of its obligation to the Atlantic and Gulf Railroad Company.

But it is unnecessary to pursue the subject further. We see nothing in the points raised on the appeal to invalidate the decree of the Circuit Court.

*Decree affirmed.*