CITY OF TOLEDO *v.* FIDELITY & DEPOSIT CO. OF
MARYLAND ET AL.

(Decided April 4, 1933.)

*Mr. J. I. O'Connor,* director of law, for plaintiff.
*Messrs. Denman, Miller, Christian & Beatty, Messrs. Tracy, Chapman & Welles, Messrs. Marshall, Melhorn, Marlar & Martin, Messrs. Fraser, Hiett, Wall & Effler, Messrs. Brown & Sanger,* and *Mr. S. M. Douglas,* for defendants.

BY THE COURT. On August 31, 1931, plaintiff, the city of Toledo, commenced a suit in equity against the

Fidelity & Deposit Company of Maryland, other corporate sureties, the Security-Home Trust Company, and Ira J. Fulton, superintendent of banks. The object sought in the suit so brought was to enforce in behalf of the plaintiff the liability of the several surety companies on bonds executed by them respectively to secure funds of plaintiff deposited in certain banks theretofore chosen as depositories. Separate depository agreements, dated January 31, 1930, were made by the plaintiff with the Home Bank & Trust Company, referred to herein as the Home Bank, and with the Security Savings Bank & Trust Company, hereinafter called the Security Bank, for the deposit of the city's funds therein, the maximum amount to be deposited in the Home Bank to be $1,000,000 and the maximum deposit in the Security Bank to be $2,000,000. To secure the performance of its agreement the Home Bank, as principal, and the surety companies below named executed bonds as follows:

Fidelity & Deposit Co. of Maryland.......$350,000.00
Fidelity & Deposit Co. of Maryland....... 500,000.00
Ætna Casualty & Insurance Co........... 200,000.00
New York Indemnity Co................. 50,000.00

This represented a total surety responsibility of $1,100,000, which included the 10 per cent. excess required by the Toledo ordinance. The Security Bank, to secure the performance of its contract, executed bonds as principal, with the following defendants as sureties:

Detroit Fidelity & Surety Co............$100,000.00
Union Indemnity Co.................... 500,000.00
Guardian Casualty Co.................. 100,000.00
Standard Surety & Casualty Co.......... 260,000.00
Equitable Casualty & Surety Co.......... 140,000.00
National Surety & Casualty Co........... 500,000.00
U. S. Fidelity & Guaranty Co............ 400,000.00

As additional security for the performance of its contract, the Security Bank deposited with the plaintiff municipal bonds of the par value of $200,000. For some of these bonds others were substituted, but the total par value thereof remained the same. Thus the Security Bank award of $2,000,000 was secured by surety bonds and collateral covering the award and the required 10 per cent. in excess thereof.

The Home Bank agreement provided for the payment of interest at the rate of 4.76 per cent. on the daily average balance, and on the $2,000,000 awarded to the Security Bank interest on the daily balances thereof was to be computed and paid monthly as follows:

On the first $500,000 at the rate of 4.395% per annum,

On the second $500,000 at the rate of $4.525% per annum,

On the third $500,000 at the rate of 4.617% per annum,

On the fourth $500,000 at the rate of 4.785% per annum.

When the depository agreement and the furnishing of the bonds and collateral above mentioned had been effected, there was on deposit in the Home Bank $1,-000,000 of the funds of the plaintiff, and in the Security Bank $2,000,000 thereof. Pursuant to the statutes of Ohio permitting same, the Home and Security Banks consolidated on June 30, 1930, to form the Security-Home Trust Company, hereinafter called the trust company, its business being thereafter continued in the building theretofore occupied by the Security Bank. No formal or additional proceedings were taken to designate the trust company as a depository of plaintiff's funds other than the recognition of it as such by the city of Toledo continuing the deposit of

its moneys therein, and conforming to the contracts theretofore made with its constituent banks.

At the time of the consolidation, the balance on deposit under the depository contract of the Home Bank was $1,000,000, and the balance on deposit under the Security Bank contract was $2,000,000; there being $3,000,000 of plaintiff's money on deposit in the two banks at the time of their consolidation. After the consolidation, the balances of the plaintiff in the two original depository agreements were carried separately on the books of the trust company until January 1, 1931; and interest was computed separately on each of these deposits and separate interest checks were forwarded to plaintiff by the trust company. On January 1, 1931, the amount on deposit was $1,500,000, on $1,000,000 of which interest was computed and paid at the rate of 4.76 per cent. per annum, and on $500,-000 thereof at the rate of 4.785 per cent. per annum. After January 1, 1931, the trust company maintained only one ledger account of the funds of plaintiff, but continued to compute and pay interest thereon as theretofore, forwarding to plaintiff one check for the entire amount thereof. The funds deposited in the consolidated bank were deposited by plaintiff as one account; no direction being given in making deposits as to how the account should be kept by the bank. It appears that plaintiff, the city of Toledo, in response to an inquiry of its director of finance, received notice about June 23, 1931, that the Equitable Casualty & Surety Company, a surety on one of the bonds of the Security Bank, had been dissolved on December 31, 1930, and placed in charge of the insurance department of the state of New York for liquidation, all outstanding bonds, policies, and other obligations of the company having been canceled by court order; and there is no dispute of these facts. With this bond eliminated, the total of the obligations of the remaining surety

bonds exceeded by more than 10 per cent. the amount of the funds of plaintiff then on deposit. After the consolidation, riders were attached to all of the remaining surety bonds, except that of Detroit Fidelity & Surety Company, each of them in varying language provided in effect that the trust company should be substituted as principal, and that, except as so modified, the bond should continue, subject to all of the terms, conditions, and limitations thereof. Although no rider was attached to the bond of the Detroit Fidelity & Surety Company, the evidence discloses that this company had knowledge of the consolidation of the Home and Security Bank, and, with this knowledge, on March 18, 1930, received and accepted the second year's premium on its bond, which was paid by the personal check of L. H. Paine, acting as broker. The amount so paid was retained by the company until July 11, 1931, when check therefor was mailed to the trust company by this surety company, to which it was remailed by the superintendent of banks on July 17th. At the trial of the action in the court of common pleas, it was again tendered, with interest thereon, to the defendant superintendent of banks, by whom it was again refused.

On June 17, 1931, the superintendent of banks took possession of the assets and property of the trust company for purposes of liquidation. There was then on deposit in the bank $1,500,000 of depository funds, all of which had been deposited therein subsequent to the consolidation, withdrawals by the city after the consolidation having been in excess of the amounts received from the Home and Security Banks. Subsequent to the default of the trust company, the below named sureties, all of which are defendants herein except the New York Indemnity Company, without prejudice to their rights or to those of the plaintiff,

made partial payments upon their surety obligations as follows:

| | |
|---|---:|
| United States Fidelity & Guaranty Co | $ 60,000.00 |
| Union Indemnity Co | 75,000.00 |
| National Surety Co | 75,000.00 |
| Standard Surety & Casualty Co | 39,456.54 |
| Guardian Casualty Co | 15,000.00 |
| Fidelity & Deposit Co. of Maryland | 350,000.00 |
| Ætna Casualty & Surety Co | 80,000.00 |
| New York Indemnity Co | 45,817.18 |

The plaintiff's account is further to be charged with the sums realized from the sale of municipal bonds pledged as additional security on the Security Bank contract.

From the decree rendered in the court of common pleas, an appeal was taken to this court by the Fidelity & Deposit Company of Maryland and the Ætna Casualty & Surety Company. Thereafter a special master commissioner was appointed to take and transmit to the court additional evidence, with his findings of facts and conclusions of law, which has accordingly been done, the cause now being before the court on motion to confirm the report and on exceptions by some of the defendants to findings of fact and conclusions of law as reported by the master. Counsel for the Security Bank group of sureties stated in argument that their only objection now, to the findings of the master, is as to the apportionment of the costs to be taxed in this action, and the rate of interest.

From the evidence we conclude that:

(1) The trust company continued to be a legal depository for the funds of the plaintiff within the limitations of the depository contracts of its constituent banks, and by the substitution and recognition of the trust company as principal all of the sureties, including the Detroit Fidelity & Casualty Company,

became and are liable for all of the moneys of the plaintiff on deposit in the defaulting trust company, and are chargeable therewith in proportion to the penalties of their respective bonds, making, of course, allowance for payments already made by the various sureties.

(2) Neither the plaintiff nor the surety companies are entitled to a preferred claim against the assets and property of the trust company. The deposit of the city's funds created the relation only of debtor and creditor.

(3) When plaintiff has received payment in full of the depository indebtedness, the sureties become subrogated to the rights of the plaintiff in the bonds held by plaintiff as additional security, in proportion to the total amounts paid by them respectively on their surety obligations.

(4) Each of the sureties is liable on its bond to the full penalty thereof, if necessary to satisfy the debt of the trust company to plaintiff, without regard to the solvency of any of the others.

(5) Interest shall be computed upon the contracts made by the two banks and the city at the several rates stipulated therein until judgment, and thereafter the judgment and decree shall draw the same rates under the provisions of Section 8304, General Code.

(6) The costs in this action, including the bills of the stenographers before the master commissioner, and the allowance made to George C. Bryce for his services as master commissioner herein, shall be divided equally among the plaintiff and the defendant surety companies, excluding the Equitable Surety & Casualty Company.

Except in so far as the report of the master commissioner is inconsistent herewith, it is approved and confirmed, and a decree rendered accordingly, the necessary computations to be made by counsel for the

respective parties herein and incorporated in the journal entry.

*Decree accordingly.*

RICHARDS, WILLIAMS and LLOYD, JJ., concur.