**AMERICAN SURETY CO. OF NEW YORK et al. v. CITY OF AKRON et al.**

No. 7270.

Circuit Court of Appeals, Sixth Circuit.

March 11, 1938.

As Modified on Denial of Rehearing May 3, 1938.

P. C. Weick, of Akron, Ohio, and C. M. Vrooman, of Cleveland, Ohio (Weick, Powers & Mason, of Akron, Ohio, and Garfield, Cross, Daoust, Baldwin & Vrooman and McKeehan, Merrick, Arter & Stewart, all of Cleveland, Ohio, on the brief), for appellants.

Gillum H. Doolittle and H. L. Mull, both of Akron, Ohio (John W. Bricker, of Columbus, Ohio, and Wade DeWoody and Byron H. Larabee, both of Akron, Ohio, on the brief), for appellees.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

The city of Akron, Ohio, and the trustees of its sinking fund filed suit against six surety companies for recovery of $39,743.23, with interest, which represented the city's balance on deposit in the First-Central Trust Company at the time of its insolvency. The superintendent of banks of Ohio was later made a party defendant. The action was tried in the District Court upon written waiver of jury trial.

The trustees of the sinking fund, on June 2, 1930, pursuant to the provisions of Sections 4515 and 4516 of the General Code of Ohio, entered into two depository contracts, one with the Central Depositors Bank & Trust Company for $400,000, and the other with the First-City Trust & Savings Bank for $400,000, and additional moneys. Both banks were required to furnish bond to secure the city's deposits. Accordingly the following companies, on June 2, 1930, executed and delivered to the trustees surety bonds for the Central Depositors Bank & Trust Company as principal, in the following amounts respectively:

| | |
|---|---|
| United States Fidelity & Guaranty Company, | $120,000 |
| Fidelity and Deposit Company of Maryland, | $ 75,000 |
| American Surety Company of New York, | $100,000 |
| Alliance Casualty Company, | $ 65,000 |

Surety bonds were similarly given for the First-City Trust & Savings Bank on the same date by the following companies, in the following amounts respectively:

| | |
|---|---|
| Globe Indemnity Company, | $100,000 |
| Independence Indemnity Company, | $100,000 |
| American Surety Company of New York, | $300,000 |

The last named bond was released by resolution of the trustees on May 24, 1932, and is not involved in this action.

On October 18, 1931, the First-City Trust & Savings Bank entered into an agreement with the Central Depositors Bank & Trust Company (hereinafter called the Central Bank), under which all the assets of the latter bank were purchased and all its liabilities were assumed by the former bank as of October 18, 1931. Pursuant to the terms of the consent of the superintendent of banks, as provided in Section 710-86, General Code of Ohio, the transfer became effective as of November 3, 1931. The purchasing bank, on December 1, 1931, changed its corporate name to the First-Central Trust Company (hereinafter referred to as the Trust Company), and on the same day, as principal, gave its bond to the trustees of the sinking fund in the amount of $100,000, with the Indemnity Insurance Company of North America as surety.

The sureties on the bonds given by the Central Bank, with the exception of the United States Fidelity & Guaranty Company, knew of the merger agreement between the two banks, and accepted from the Trust Company renewal premiums on their respective surety contracts.

The Trust Company was taken over for liquidation by the superintendent of banks on June 21, 1933, at which time the trustees had city funds on deposit in the bank, in the amount in suit. Prior to insolvency the Trust Company had acquired bonds of the city of Akron of the face value of $229,600, which it pledged on March 17, 1933, to the Federal Reserve Bank of Cleveland as collateral security for an existing indebtedness.

The court of common pleas of Summit county, Ohio, on December 3, 1933, approved a plan for the resumption of business by the Trust Company and in conformity thereto, the superintendent of banks applied for and received a loan of $25,000,000 from the Reconstruction Finance Corporation (hereinafter referred to as the RFC). The application provided that a list of the Trust Company's assets to be pledged as security for the loan should be furnished to the RFC, and should give information as to existing or claimed set-offs against such assets. The municipal bonds were listed among the assets with no notations as to set-offs. The Trust Company's debt to the Federal Reserve Bank was paid on January 15, 1934, out of the proceeds of the RFC loan, but the municipal bonds were still held by the Federal Reserve Bank as custodian for the RFC.[1] The journal entry of the state court approving the plan for resumption of business provided that "Upon payment by the Superintendent of Banks of the existing loans and while the assets of the Bank are temporarily in his hands, all rights of set-off shall attach and be allowed in due course." Certain of the municipal bonds, amounting to $33,600, matured on October 1, 1934, were presented by the RFC for payment, and were paid by the trustees. The RFC retained the proceeds, and credited the payment on the obligation of the superintendent.

The District Court rendered judgment in favor of the United States Fidelity & Guaranty Company, but held the American Surety Company of New York, Fidelity and Deposit Company of Maryland, Alliance Casualty Company, Indemnity Insurance Company of North America, and the Globe Indemnity Company, jointly and severally liable.

The principal questions are (1) whether by accepting premium payments on their surety bonds from the successor bank after the merger, certain sureties were estopped to deny their liability; (2) whether the fact that the city of Akron paid certain municipal bonds upon presentation dis-

---

[1] Paragraph 32 of the Findings of Fact and Conclusions of Law of the District Court reads as follows:

"The City of Akron bonds referred to in items 24 and 25 hereof remained in the possession of the Federal Reserve Bank from the date of the deposit thereof with the Federal Reserve Bank until November 15, 1933. On this date said bonds were turned over to the Reconstruction Finance Corporation for the purpose of being checked against the application for a loan made by the Superintendent of Banks, as found in Item 30 hereof. Sometime before January 15, 1934, said bonds were returned to the Federal Reserve Bank. When the indebtedness of the First-Central Trust Company to the Federal Reserve Bank was paid on January 15, 1934, the Federal Reserve Bank continued to hold said bonds, but as custodian for the Reconstruction Finance Corporation."

No exception was taken to this, nor to any of the findings of fact.

charged the sureties; (3) whether the sureties were entitled to have the municipal bonds held by the Trust Company set off against their obligations under their surety contracts.

■ Upon the first question, the District Court held that the acceptance of renewal premiums by the sureties of the Central Bank from the successor bank constituted recognition of the successor bank as principal, and estopped such sureties from denying liability under their bonds. Judgment was rendered for the United States Fidelity & Guaranty Company upon the ground that the company had accepted no premium after the consolidation of the two banks.

We think this ruling is correct. With full knowledge of the merger contract, and some eight months after its completion, the appellant sureties of the Central Bank accepted premiums from the successor bank. From that time until the Trust Company was taken over for liquidation (some eleven months later), the sureties indicated no intention not to recognize the Trust Company as their principal. They had ample opportunity to determine their liability under the bonds, and to determine the facts as to withdrawals made both before and after the merger was completed. Receipt by the sureties of premiums from the bank which was not their original principal as payment under their original surety contracts, with knowledge of the consolidation, constituted recognition of the successor bank as principal. By this conduct the sureties misled both the Trust Company and the city, and lulled them into a feeling of security. If the sureties had refused the premiums and had given notice that they would not recognize the successor bank, there was ample time for both the city and the Trust Company to secure other depository bonds and to protect the funds. The sureties slept upon their rights, and the city was induced to refrain from securing further protection. These particular sureties are now estopped to deny that the Trust Company was their principal and that they are liable to the city as obligee because of the Trust Company's default. Branch v. Jesup, 106 U.S. 468, 476, 1 S.Ct. 495, 27 L.Ed. 279; Carnegie, Phipps & Co., Ltd., v. Hulbert, 8 Cir., 70 F. 209, 217. Cf. City of Toledo v. Fidelity & Deposit Co. of Maryland, 46 Ohio App. 97, 102, 187 N.E. 790.

■ The fact that the city withdrew all of its funds from the Central Bank on October 28, 1931, prior to the consummation of the merger, is immaterial. The withdrawal was made after the contract of merger was executed, and the contract itself covered all liabilities existing on October 18, 1931. On that date $300,000 of the city's funds were on deposit with the Central Bank. The purpose of all these surety bonds was to secure to the limits set forth in the respective surety contracts whatever variable amounts were, or would be, on deposit in the account of the city during the term covered by the bonds. The contention, therefore, that the sureties were discharged by the withdrawals on October 28, 1931, for the reason that the obligation of their several bonds to the Central Bank had then been performed, has no merit.

■ Upon the second question, the sureties claim that the city had no right to pay certain bonds which matured in 1934, because the sureties had already made their claim for set-off. The proposition advanced is that, at the demand of these sureties, the city should have refused payment of these bearer bonds and should have defaulted in the performance of an obligation to which its full faith was pledged. The sureties' interest was no greater than that of the principal, which was a mere pledgor with an interest plainly secondary to that of the RFC. The RFC was subrogated to the rights of the first pledgee, the Federal Reserve Bank, for part of the proceeds of the RFC loan were used to pay off the Federal Reserve Bank loan. The substitution of the RFC as pledgee has placed no additional burden upon these sureties, and its equity is superior. The payment of the municipal bonds at the demand of the RFC did not discharge the sureties.

■ The third, and major, question in the case arises out of the fact that the District Court denied the sureties the right to set off municipal bonds owned by the Trust Company against the amount of the city funds on deposit at the time that the Trust Company closed its doors. All the sureties contend that upon the insolvency of the bank, their right of set-off attached, subject to the lien of the Federal Reserve Bank; that when the superintendent of banks paid the Federal Reserve Bank, he redeemed the pledge of the bonds, and the right of set-off became complete notwithstanding that the bonds were later pledged to the RFC. The surety can avail itself of whatever right the principal has, including

that of set-off. Fidelity & Deposit Co. of Maryland v. Duke, 9 Cir., 293 F. 661. The sureties contend that under this well-established rule the Trust Company and the sureties had both a legal and an equitable right to set off so many of the bonds as would cancel the city's deposit.

It is clear that no right of legal set-off existed, because none of the city's bonds had matured at the time of insolvency.

Section 11319, General Code of Ohio, creates the right of legal set-off, and reads as follows:

"A set-off is a cause of action existing in favor of a defendant against a plaintiff between whom a several judgment might be had in the action, and arising on contract or ascertained by the decision of a court. It can be pleaded only in an action founded on contract."

This statute gives no set-off except when demands are mutual and where both demands are due at the time of the claimed right of set-off. A several judgment might not be had in the action except upon a demand which was due at the time that insolvency intervened. This is the construction given to this statute by Ohio courts. Fuller v. Steiglitz, Assignee, 27 Ohio St. 355, 22 Am.Rep. 312. But none of the municipal bonds were due on June 21, 1933, the date of insolvency. Neither were any of them due on March 17, 1933, when they were pledged with the Federal Reserve Bank, nor on January 15, 1934, when the RFC was substituted as pledgee, and hence no statutory right of set-off under Section 11319, General Code of Ohio, existed. It follows that Section 11321, General Code of Ohio, which provides that the statutory right of set-off cannot be defeated by assignment, does not apply.

■ A right of equitable set-off, however, attaches where mutual demands exist and where insolvency has intervened even though one of the demands has not yet matured. Scott v. Armstrong, 146 U.S. 499, 507, 13 S.Ct. 148, 36 L.Ed. 1059; Rue v. Miller, 6 Cir., 124 F. 208; Harter Bank of Canton v. Inglis, 6 Cir., 6 F.2d 841; First National Bank of Indianola v. Malone, 8 Cir., 76 F.2d 251. However, this right of equitable set-off is not absolute or paramount to the superior equities of other claimants. Harter Bank of Canton v. Inglis, supra. Cf. Gray v. School District, 3 Cir., 67 F.2d 141, 143, which pointed out that the right of equitable set-off could be enforced only where no equity of third persons will be injured. Here, the Federal Reserve Bank of Cleveland had possession of the municipal bonds at the time of insolvency. Later, when the RFC loaned $25,000,000 to the Trust Company in order that it might resume its business, the municipal bonds were pledged to the RFC, and its claim became a prior lien thereon. The municipal bonds were collected by the RFC as pledgee, and hence they could not be set off against the city's deposit. Ellerbe v. Studebaker Corporation of America, 4 Cir., 21 F.2d 993, 997. The equity of the RFC was superior, and thus the doctrine of equitable set-off does not aid the sureties. Harter Bank of Canton v. Inglis, supra.

■ Moreover, the city's demand arising out of its deposit could not have been compensated by the Trust Company's cross-demand arising out of its ownership of the municipal bonds. This is the necessary conclusion from the fact that subsequent to the date of the original pledge the municipal bonds were never in the possession of the superintendent of banks free from lien. For the same reason the journal entry of the court of common pleas with reference to set-offs has no bearing. It allowed rights of set-off to attach "while the assets of the Trust Company are temporarily" in the hands of the superintendent of banks, but the municipal bonds were not even temporarily in his hands. The Trust Company could not, by the surrender of the municipal bonds, have compensated the city for the loss of its deposit, because the Trust Company did not have the bonds.

Counsel have stipulated that the judgment of the District Court may be satisfied of record to the extent of $13,920.13 paid to the city of Akron by the superintendent of banks on the city's claim herein, and that interest thereon shall be abated pro tanto from and after September 23, 1937, the date when such payment was made.

■ In addition, the appellant sureties contend that there should be a further abatement in interest on the judgment from the dates that the liquidating dividends became available for payment to the city, namely, January 15, 1934, for the first liquidating dividend of $9,942.95, and December 10, 1936, for the second liquidating dividend of $3,977.18. The District Court found that the first liquidating dividend had not been accepted by the city. Under this record

the city had no right to refuse to accept this dividend, and the contention of the sureties in this regard is sustained.

The judgment of the District Court is modified in accordance with the stipulation of the parties, and also to provide for the abatement in interest on the two liquidating dividends from the dates given above, and as so modified is affirmed.