CITY OF LINCOLN V. LINCOLN STREET-RAILWAY COMPANY ET AL.

FILED FEBRUARY 4, 1903.  No. 12,842.

Commissioner's opinion.  Department No. 2.

1. **Stipulation**: AGREEMENT: RELEASE: MISTAKE: REMEDY: MOTION TO WITHDRAW: REFORMATION OF AGREEMENT.  One party to a stipulation or an agreement can not be released from a part of it on the ground of a mistake and still leave the other party bound thereby; his remedy is not by motion to withdraw from a part of the stipulation, but by a proceeding to reform the agreement, or to set it aside altogether.

2. **Discretion of Court as to Withdrawal of Stipulation.**  Where a party waits until near the close of a second trial before asking to withdraw from a stipulation of facts used by both parties on both trials, the court may, in its discretion, refuse such request.

3. **Street-Railway Company:** POWER TO BORROW MONEY.  A street-railway company authorized to construct, equip and operate lines of electric street-railway may purchase lines already constructed and fit and suitable for the extension and completion of its system, as well as construct the same.  And a recital contained in a mortgage executed by such company that it has power to borrow any sum or sums of money which may be necessary for the purchase, construction and equipment of its electric street-railway will not render the mortgage void upon its face.

4. **Charter.**  The charters of all street railway companies in this state are created by general law.  Cities have no power to grant such charters or impose any limitations thereon, and the act of 1889, authorizing street-railway companies to borrow money for certain purposes and secure the payment of the same by mortgaging their property and franchises, applies to all street-railway companies in this state, whether chartered before or after the passage of that act.

Syllabus by court; catch-words by editor.

5. **Mortgage:** EXCESSIVE AMOUNT: PROOF: PRESUMPTION. Where it is claimed that a mortgage executed by a street-railway company is for an amount in excess of that permitted by law and its charter, such alleged fact must be proved, so that an examination of the record will disclose it. Otherwise it will be presumed that the mortgage was not for an excessive amount.

6. **Fictitious Indebtedness.** Where a street-railway company mortgaged its property and franchises to secure the sum of $600,000 for the purpose of purchasing, constructing and equipping its lines of electric street-railway, and it is shown that it expended for that purpose about $900,000, it can not be said that the mortgage was given to create a fictitious indebtedness.

7. **Bonds:** MORTGAGE: TRUST DEED. A series of bonds secured by a mortgage or trust deed on the property of a street-railway company are negotiable, and as between bona-fide purchasers thereof for value, are equal in priority; the lien of each bond dating from the recording of the mortgage that secured it and not from the time it was issued.

8. **Special Assessments:** PAVING TAXES: FIRST LIEN. Such a mortgage is a first lien upon the property of the street-railway described therein as against all special assessments for paving taxes, except such as were assessed for paving already done, or as were in contemplation at the time it was recorded.

9. **Lien Upon Personal Property.** Section 77 of chapter 11 of the Session Laws of 1887, which creates a lien for paving taxes against the lines of street-railway companies, does not make such special taxes a lien on their personal property.

10. **Special Assessments:** INTEREST. Under the statute, the taxes levied as special assessments in cities of the first class draw interest at the rate of twelve per cent. per annum from the time of delinquency, and a decree enforcing a tax lien arising thereon will draw interest at the same rate. A computation of the amount due on special assessments upon that basis will be sustained. *Lincoln St. R. Co. v. City of Lincoln*, 61 Nebr., 109.

11. **Creditor:** DIVERSION OF PAYMENT. A creditor can not divert a payment by his debtor from the appropriation made by him, upon mere equitable considerations that do not amount to an agreement between the parties giving the creditor a right to appropriate the payment otherwise than directed by the debtor, though mere equitable considerations may control where the payment is made without designating its application.

12. **City Treasurer:** DIRECTION GIVEN. The direction given by defendant to the city treasurer, as shown by the evidence in this case, was specific enough to require him to credit the payment of

the $5,000 deposited with him on the taxes which were a first lien upon the defendant's line of street-railway.

13. **Decree of Foreclosure:** PURCHASER: CHALLENGING VALIDITY OF DECREE. One purchasing property and retaining title to it under a decree of foreclosure, will not be permitted to challenge the validity of such decree.

14. **Purchase of Property:** DIVESTING LIEN: THIRD LIEN: CANCELATION OF LIEN. The sale and purchase of property under a decree of foreclosure divests the property of the lien of the decree; but where the decree is also a third lien upon other property such proceedings do not operate to cancel the lien thereon for the amount of the deficiency arising upon such sale.

15. **Street Improvements:** SPECIAL ASSESSMENTS. "Where street improvements are made and the cost of paving that portion of the street occupied by street-railway companies is levied as special assessments against the property of several street-railways as separate properties, and the different street-railways are afterwards consolidated and merged into one property and operated as one street-railway system, the old companies losing their individuality and identity and the new company assuming the burdens and obligations of the constituent companies, *held*, that, as between the consolidated company and the municipal authorities levying such special assessments, the liens arising by reason of the several assessments against the different constituent companies and properties attach to the new property owned and operated by the substituted company as one property in its entirety." *Lincoln St. R. Co. v. City of Lincoln, supra.*

16. **Street-Railway Property:** SPECIAL ASSESSMENT: TAX LIEN: MERGER. "Where, however, a mortgage was placed upon a street-railway property, and afterwards another company, against which certain liens for taxes levied as special assessments existed, was consolidated with the mortgagor company, *held*, that the lien of the mortgage on the property covered thereby, without the consent of the mortgagee, could not be impaired by the agreements and acts of consolidation, and that the tax lien on property consolidated and merged into the new company, and with the property mortgaged, could not be made prior to the mortgage lien on all the property after consolidation; that the tax and mortgage liens attached to the specific properties embraced in the levy and the mortgage respectively," in accordance with their original priorities. *Lincoln St. R. Co. v. City of Lincoln, supra.*

17. **Finding of Trial Court:** SUPERIOR LIEN. Where the trial court finds, on sufficient evidence, that certain assessments for paving taxes were in contemplation at the time of the execution of a mortgage by the street-railway upon its property, it follows

as a matter of law that the lien of such taxes is superior to the lien of the mortgage.

18. **Assessments:** CAR LINES: PAVING OUTSIDE OF RAILS. Assessments for paving one foot outside of the rails of street-car lines will not be held void where such paving was done while the statutes were in force providing that street-railway companies should be required to pave between their tracks and one foot outside of the rails thereof.

19. **District Court:** DISCRETION: PERSONAL JUDGMENT. The district court, in its discretion, may refuse to render a personal judgment against defendants at the time of the rendition of its decree in a suit to foreclose tax liens, and may defer such action until after the execution thereof.

ERROR from the district court for Lancaster county. Second trial of case reported in 61 Nebr., 109. The ultimate facts are clearly stated in the opinion. Tried below before CORNISH, J. *Affirmed.*

*Edmund C. Strode* and *D. J. Flaherty,* for plaintiff in error.

*Paul F. Clark, Charles S. Allen, J. W. Deweese* and *Frank E. Bishop, contra.*

BARNES, C.

This is an action brought by the city of Lincoln to foreclose a lien for certain special assessments, or paving taxes, against the Lincoln Street-Railway Company, the New York Security & Trust Company, the New York Guaranty & Indemnity Company, Brad D. Slaughter, receiver, and the Lincoln Traction Company. At a former trial in the district court for Lancaster county a decree was rendered in favor of the city for about $108,000, and it was awarded a first lien for that sum on all of the property of the street-railway owned by the consolidated company, and afterwards purchased by the persons who formed the Lincoln Traction Company. From that decree the defendants prosecuted error to this court, and on the hearing the decree of the trial court was reversed and the cause was remanded

for a new trial. Counsel for the city thereupon obtained leave to file an amended and supplemental petition in the district court. To this petition the defendants filed an answer, and the city, by its reply, for the first time, raised the question of the validity of the mortgages involved in this controversy. Counsel for the city also attempted to withdraw from a part of the stipulation of facts on which the former trial was had, but the court refused to allow them to do so. These questions were litigated on the second trial, together with the same issues on which the former trial in the district court was conducted. The trial resulted in a series of findings, which we will not quote in full, but will refer to them as occasion requires, and a decree in favor of the plaintiff for a first lien, amounting to $48,180.25, in effect a second lien for $6,855.83, and a third lien for $37,352.63 on all of the property of the consolidated company, except the lines acquired and constructed after the consolidation took place, and a foreclosure of said liens as prayed. The court found and decreed that the plaintiff was not entitled to a lien on the personal property of the company. From this decree the city prosecutes error, and the defendants appeal to this court. Thus the case is before us a second time.

Most of the questions presented herein were decided in our former opinion, which is reported in 61 Nebraska, at page 109. It appears that, prior to the year 1891, several corporations, under different names, had acquired franchises for the purpose of constructing and operating lines of street-railway in the city of Lincoln; that all but one of them had constructed a portion of their lines, and were operating them with horse-cars; that early in that year one F. W. Little, acting for a company or syndicate known as F. W. Little & Co., purchased all of said franchises and lines of street-railway which had been constructed by the several companies, and merged them into one corporation, called the Lincoln Street-Railway Company, with the single exception of the lines owned by a corporation called the Rapid Transit Company; that said lines were recon-

structed, extended, connected, and equipped with electric motive power, as a system of electric street-railway for the whole city; that on the 20th day of July, 1891, the said consolidated company executed and delivered to the New York Security & Trust Company a mortgage for $600,000, which is one of the mortgages in question herein; that on the 16th day of November, 1891, the Rapid Transit Company's lines were taken over by the said consolidated company, and a final consolidation was effected, the company being thereafter known as the Lincoln Street-Railway Company; that meanwhile the said company became indebted to the city on account of certain special taxes for paving between the rails of its tracks in the several paving districts of the city, which taxes and the liens thereof, are the principal matters in controversy in this suit; that after the final consolidation was effected a mortgage was executed and delivered to the New York Security & Indemnity Company, which is the second mortgage in question herein; that shortly thereafter the New York Security & Trust Company commenced an action to foreclose its mortgage in the United States circuit court for the district of Nebraska; that a receiver was appointed, who took charge of the property; that the New York Security & Indemnity Company filed its cross-bill and the mortgages were foreclosed; that the property was sold under the decree, and was purchased by the persons who now own and operate the lines under the name of the Lincoln Traction Company; that in the decree of foreclosure the rights of the city were duly protected; and that about that time the city commenced this suit to foreclose its paving tax lien. It further appears that, after the consolidated company absorbed the Rapid Transit Company and its property, a large part of the Rapid Transit's lines were sold to a corporation called the Home Street-Railway Company; that a suit was afterwards commenced in the federal court for the district of Nebraska, by a party who had furnished the money to reconstruct and equip the Rapid Transit Company's lines, to foreclose a lien thereon, and

that the city, in order to save and preserve its lien, filed a cross-bill in said suit and obtained a decree giving it a first lien on the property for and on account of the separate paving taxes assessed against it; that the property was sold under the decree and was purchased by the city; that it did not sell for enough to satisfy the decree, and a large part thereof was and is still due to the plaintiff herein. This was the situation in which matters stood at the time of the second trial in the district court, which resulted in the decree now before us for review.

Counsel for the city contend that the court erred in refusing to allow plaintiff to withdraw from a portion of the written stipulation made by the parties herein, and upon which the former trial was had. We take up this question a little out of its regular order, because many of the other assignments presented herein will be settled by the determination of this one. The record shows that counsel for the city, before the case was called for trial, filed an application to be permitted to withdraw from paragraphs 15 and 16 of the stipulation. The court overruled and denied the application. The city excepted and now strenuously urges that such ruling was reversible error. An examination of the bill of exceptions, discloses that the stipulation contained thirty-eight paragraphs and covered 213 pages of the record; that by its use the city was saved the trouble and expense of proving its ordinances and resolutions, the engineer's estimates, the assessments in question, the time and manner of making them, and the amount due thereon. In fact, it appears that the city obtained such substantial benefits and concessions thereby that the trial court must have deemed it unjust and inequitable to allow it to withdraw from the two paragraphs in question and retain the benefits accruing to it by the other portions thereof. In *Gerdtzen v. Cockrell*, 52 N. W. Rep. [Minn.], 930, the court held that one party to a stipulation or an agreement could not be released therefrom on the ground of a mistake, and still leave the other party bound thereby; that his remedy was not by motion

to withdraw from it, but by a proceeding to reform the agreement. In the case of *Welsh v. Noyes*, 10 Colo., 133, 14 Pac. Rep., 317, it was held that "a stipulation in a case by both parties, made for convenience and expedition, but by which counsel inadvertently admit facts not in accord with the premises, and injurious to their client, may be relieved against; but to strike out a portion of a stipulation on the suggestion of one party is error if such part be material. The entire stipulation should be canceled." Counsel for the city made no formal application to be allowed to withdraw from and cancel the whole stipulation, and have it set aside; and no application was made to have it reformed. The rule that one party can not withdraw from a part of a stipulation of facts made for the purpose of expediting the hearing of a case, and leave his opponent bound thereby, is one founded in reason and justice and is so well settled that it is no longer an open question. Therefore the trial court did not err in denying the application. Counsel for the city claim, however, that they asked to be allowed to withdraw from the whole stipulation and to have the same wholly set aside, and that the court erred in not permitting them to do so. It appears on page 742 of the bill of exceptions that during the trial, and while the defendants were introducing evidence, they offered paragraphs 15, 16 and 17, and a portion of paragraph 8 of the stipulation of facts, being that part of it which had not been put in evidence by the' city; that thereupon the following objection was made: "Counsel for the plaintiff object to paragraphs 15 and 16, for the reason that the same purport to stipulate facts which are not the facts, but which are untrue; and for the reason that counsel for the city did not know at the time the original stipulation was entered into that such facts were not true, but assumed they were, on the representation of counsel for the defendants, whereby plaintiff was misled; and counsel for plaintiff asks leave to withdraw from the stipulation, and particularly from paragraphs 15 and 16, because the alleged facts therein stated are not

true." The court overruled the objection, and denied the request. We think the request was insufficient in form. It was for leave on the part of the plaintiff to withdraw from the entire stipulation, but no request was made to wholly set it aside. If this request had been granted, it would still have left the defendants bound by the agreement. It would also seem that the application came too late to be entertained by the court. The plaintiff had made its case and rested; it had put in evidence all of the stipulation, except that portion of it which defendants were then attempting to introduce, and it would have been unjust at that stage of the proceedings to deny the defendants the benefit of these paragraphs. Yet counsel insist that the court, in the exercise of its discretion, ought to have sustained the objection and granted their request. We can not assent to this proposition. Paragraph 15 fixed the time when the bonds and mortgage in question were delivered to the New York Security & Trust Company, and stipulated that they were sold to bona-fide purchasers for value, without knowledge or notice of any of the matters mentioned in the stipulation, except such constructive notice, if any, as was imparted by the corporate records of the street-railway company, and of the city of Lincoln and the laws of this state. Paragraph 16 contained practically the same statements as to the bonds and mortgage executed and delivered to the New York Guaranty & Indemnity Company. These paragraphs had been disregarded by the plaintiff, and it had been permitted to introduce other evidence by which it sought to establish the fact that the lien of the mortgages attached at a time subsequent to that fixed by the agreement. It is certain that the trial court found that the evidence so introduced was insufficient to establish the fact sought to be proved, and such finding will not be set aside. If the court had sustained the objection and granted the request, the result would have been a mistrial; it would have rendered it necessary to retry the whole case, and to require this to be done would have been an abuse of discretion. Stipula-

tions and agreements like the one in question, should be encouraged and sustained by the court. *Palmer v. People,* 4 Nebr., 68, 76; *Rich v. State Nat. Bank of Lincoln,* 7 Nebr., 201, 205, 29 Am. Rep., 382; *State Bank of Nebraska v. Green,* 8 Nebr., 297, 307. In *Van Horn v. Burlington, C. R. & N. R. Co.,* 69 Ia., 239, we find the following: "Where a party enters into a written stipulation as to material facts in a case, he can not on the trial disregard the stipulation and introduce evidence to contradict it, on the ground that he was not informed as to the facts when he entered into the stipulation." In *Ryan v. Mayor,* 154 N. Y., 328, 332, 48 N. E. Rep., 512, the court held that, under a stipulation that upon a second trial of an action "the evidence taken upon the previous trial be read at the trial term as the evidence in this action," either party is entitled to the benefit of whatever the record of the previous trial presented as evidence, and letters put in evidence at the previous trial by the plaintiff, without objection, may be read by the defendant as a part of his case, without reference to their competency. The court in that case sustained the stipulation and agreement absolutely, although it was sought by one of the parties to be relieved therefrom. For these reasons, we hold that the court was not guilty of an abuse of discretion in overruling the plaintiff's objection and denying its request.

The city now claims that the mortgage to the New York Security & Trust Company is void for illegality. No such claim was made upon the first trial in the district court, or upon the former hearing before us; but after the case was remanded to the district court for a new trial, counsel for the city filed a supplemental petition, to which the defendants filed an answer, and in reply to this answer it was alleged that the mortgage was void. This question was thereupon litigated in the trial court, and resulted in a finding against the city. Defendants contend that this question could not be raised for the first time by the reply, and, technically speaking, this may be true; but as long as the question is before us, we may as well determine it upon

its merits.    The first point made by the city is that it appears upon the face of the mortgage that it was given for an unauthorized and illegal purpose.    This contention is based on the fact that the mortgage recites "that the company is authorized by law to borrow any sum or sums of money which may be necessary for the purchase, construction and equipment of its lines of electric street-railway," while the statute which authorizes a street-railway company to borrow money provides that it is authorized to make mortgages and "execute deeds of trust upon its railway and property, in whole or in part, including its real and personal property and franchises, to secure money borrowed for the construction and equipment of their roads."[*] It is strenuously contended that the word "purchase" not being a part of the statute, its appearance in the recitals of the mortgage renders it void on its face.    No authorities are cited by the city which directly sustain this point, and even if the city is in a position to raise this question we think the construction of the statute contended for is entirely too narrow.    A similar question was before the New York court of appeals in *Gamble v. Queens County Water Co.,* 123 N. Y., 91, 9 L. R. A., 527.    In that case a shareholder in the waterworks company, at his own expense and for his own personal benefit, had built a system of pipes suitable for an extension of the company's plant.    He sold this property to the company and received in payment therefor its stock and bonds.    The point was made that the purchase was void, and the bonds issued in payment therefor were also void, because the company was not authorized to issue them for that purpose.    The statute under which they were issued provided that the company might borrow money for the purpose of constructing its water-works, and issue bonds for the payment thereof. The court disposed of the question as follows (p. 109) : "It is altogether too narrow a construction of the statute to hold that the corporation must itself construct the works, and

---

[*] Cobbey's Annotated Statutes, sec. 10088; Compiled Statutes, ch. 72, art. 7, sec. 11.

may not purchase works already constructed, and fit and suitable for its purposes." A like question was before the supreme court of the United States in the case of *Branch v. Jesup*, 106 U. S., 468, 27 L. Ed., 279. It was held that where a railroad company had power to construct a particular line of road, it might purchase from another company a railroad constructed upon that line. In the case at bar, the Lincoln Street-Railway Company had power to construct and operate lines of street-railway throughout the city of Lincoln. It had power to mortgage its property and franchises to construct and equip such lines. No good reason can be suggested why it could not, under such power, purchase a line of street-railway constructed in whole or in part if suitable for its purposes, complete, equip and construct extensions thereto, and connect it with its other lines, so as to form a complete system of street-railways for the whole city. We therefore hold that the finding of the trial court that the mortgage was not void upon its face was right, and should be affirmed.

The second consideration urged upon our attention as a reason for holding the mortgage void, is that the property and franchises were inalienable. This contention is based on the following premises: That the ordinance under which the electors of the city of Lincoln voted to authorize the street-railway companies to construct their lines upon the streets of the city, together with its adoption by the popular vote, in effect created the charters of the street-railway companies, and was the source of their franchises; that the ordinance contained no privilege of alienation; that these matters amounted to a contract between the city and the street-railway companies; that the franchises and privileges were personal to the companies to which they were granted, and, therefore, could not be alienated or transferred; and that the legislature, by a subsequent act, authorizing street-railway companies to alienate or mortgage their property and franchises, could not confer such a right upon the companies or those who purchased their franchises so acquired. This question was

settled by our former decision.  In 61 Nebr., 109, Mr. Justice HOLCOMB, speaking for the court, said (p. 125): "Counsel for defendants insist that the ordinance establishes a contract with respect to its franchise, defines its terms and grants property rights, which are infringed upon by the statutes afterwards enacted requiring the company to pave the part of the streets occupied by its tracks.  We observe no authority in the statute giving to the city the right to grant charters to street-railway companies, and as all such authority must be derived from the statute, we must conclude that, unless it is found there, it does not exist.  By the constitutional provisions quoted, special charters are prohibited, and corporations receive their franchises only by general law, and subject to all legal rules and statutes as to the reserved right of the lawmaking power of alteration and amendment.  The laws of the state and the articles of incorporation are considered in the nature of a grant, and constitute the charter of the company.  *Abbott v. Omaha Smelting Co.,* 4 Nebr., 416; *Lincoln Shoe Mfg. Co. v. Sheldon,* 44 Nebr., 279.  In the case of a street-railway corporation, the grant by the legislature under general law, is, by the constitution, ineffectual, without such company first obtain the consent of a majority of the electors to the construction and operation of a proposed street-railway over the streets where such railway is to be constructed.  The statute provides how such consent may be secured.  Compiled Statutes, 1887, p. 562, ch. 72, art. 7.*  It is therein provided how the question shall be submitted.  No authority is given the city except to submit the proposition.  It is not authorized to grant a charter upon any terms whatever.  There is, we think, a marked distinction between a provision enacted for the purpose of securing the consent of a majority of the electors of a city for a street-railway corporation chartered under the general laws to construct and operate a street-railway over the streets of such city, and authority to the city, as a municipal corporation, to grant to such

---

* As amended, see Cobbey's Annotated Statutes, secs. 10078 *et seq.*

37

corporation a charter to construct its railway over the streets under the terms and stipulations entered into by such city. While it is essential that the consent of a majority of the electors be secured before any charter or franchise rights can accrue to a street-railway company, the provisions of the constitution and the statutes requiring such consent can not be made the basis of a contract respecting corporate rights and privileges between the city and such company. The charter rights are derived from the general law. The consent of a majority of the electors can only be regarded as a condition precedent, on the happening of which is dependent the right to construct and maintain on the streets a railway, and does not enlarge or restrict the grant arising by virtue of the general laws, or in other respects affect the legislature in the exercise of its lawful authority. The property rights of the defendant company, its right of an easement in the streets for the purposes of its creation, and its corporate franchise derived under the law, are all recognized and respected. If contention of counsel be correct, and the ordinance and its acceptance constitute a contract between the city and defendant with respect to its franchise, then it is in the power of the authorities of the different towns and cities to enter into contract relations with respect to such franchise, which in effect creates special charters, nullifies the constitutional provisions referred to, and renders impotent the legislature as to all future legislation in regard to such matters. This clearly is not the law." The charter or franchise of the company having been created by the legislature under general laws, that body could at any time change, amend, enlarge or restrict any of the rights and privileges conferred thereunder. And the act of 1889 authorizing street-railway companies to borrow money for certain purposes and to mortgage their property and franchises to secure the payment of the same, is valid, and applies to the defendants and all other street-railway companies in this state.

The third contention is that the mortgage was given to

secure a fictitious increase of corporate indebtedness, within the prohibition of the constitution. Section 5, article 11 of the constitution provides: "No railroad corporation shall issue any stock or bonds, except for money, labor or property actually received and applied to the purposes for which such corporation was created; and all stock, dividends, and other fictitious increase of the capital stock or indebtedness of any such corporation shall be void. The capital stock of railroad corporations shall not be increased for any purpose, except after public notice for sixty days, in such manner as may be provided by law." This provision is an important one. It was intended to prevent overcapitalization of railroads, and prohibit the issuance of what is commonly known as "watered stock," upon which exorbitant charges for transportation of passengers and commodities might be based, thus creating an apparent necessity for such charges, in order to earn and pay dividends thereon. It is a wise and beneficent measure, and we should enforce it strictly whenever occasion requires or opportunity permits us to do so. It is doubtful if this provision applies to street-railway companies. It appears, however, that the money borrowed upon the mortgage in question was used to pay for some of the constituent properties purchased by the defendant, which became parts of the property of the consolidated company; that some of it was used for the construction and extension of the several lines of street-railway so purchased, and a large part of it was used to electrically equip the whole system; that the amount of money expended for these purposes was about $900,000, so that no fictitious indebtedness was created by the mortgage in question; and it appears that the company in effect received property, money or labor for the amount, and to the extent of a much greater sum than the total amount of bonds secured by the mortgage.

It is further contended that the mortgage is void because it was for an amount in excess of that authorized by law. The evidence does not sustain this claim, so far as we can ascertain from the bill of exceptions. Therefore this con-

tention must fail. The finding of the trial court upon that question is sustained by the evidence and should be affirmed. It follows that the mortgage was valid, and created a lien upon the property described therein. Having held that the mortgage is valid, it is unnecessary to discuss or determine the question of its negotiability. The question of the negotiability of the bonds secured thereby was disposed of in *Kendall v. Selby,* 66 Nebr., 60, and in *Garnett v. Myers,* 65 Nebr., 280, where it was held that such bonds were negotiable. It may be further stated that the finding of the court that the bonds were executed and signed in substantial compliance with the statutes is also sustained by the evidence, and is affirmed.

It is contended by the city that the lien of the mortgage did not attach to the property of the defendant until some time subsequent to the 20th day of July, 1891; that the court erred in its finding that it became a lien thereon at that date. By the terms of the stipulation the court was required to fix that date as the time when the mortgage of the New York Security & Trust Company became a lien on the property. Having upheld the stipulation, the finding of the trial court upon that question must be sustained. But waiving the stipulation, we are satisfied that the city failed in its attempt to show that it did not become a lien until a later date. The evidence discloses that the mortgage was delivered to the trust company on July 20, 1891, and that the bonds secured by it were sold to the purchasers thereof for value. The dates of said sales are not shown. It follows that we must hold that the mortgage became a lien from the time it was delivered and recorded, which was July 20, 1891. Jones, Mortgages [6th ed.], sec. 374; *Omaha Coal, Coke & Lime Co. v. Suess,* 54 Nebr., 379. In the case of *Pittsburgh, C., C. & St. L. R. Co. v. Lynde,* 55 Ohio St., 23, the supreme court of Ohio held that: "The bonds of an Ohio railroad corporation, payable in New York city to bearer, are negotiable without indorsement, although sealed with the corporate seal, notwithstanding that they were made in 1864, while section 1 of

the act of 1820 (1 Swan & Critchfield, 862), in relation to
negotiable paper, was in force.   Where such bonds are se-
cured by a mortgage on the roadway and other property of
the maker, executed to a trustee for that purpose and are
issued at different times, the lien of all the bonds outstand-
ing in the hands of bona-fide holders for value, are equal
in priority; the lien of each bond dating from the record
of the mortgage that secured it, and not from the time it
was issued." We therefore hold that the finding of the
trial court that the mortgage in question became a lien on
the property of the street-railway company July 20, 1891,
should be sustained.

The contention is made that the court erred in holding
that the New York Security & Trust Company's mortgage
takes precedence over the lien of the special assessments
made subsequent to the execution and delivery thereof.
This question is settled by our former decision.   The lan-
guage of Judge HOLCOMB on that branch of the case is as
follows (p. 159) :   "The statute on the subject is as fol-
lows:   'No mortgage, conveyance, pledge, transfer or in-
cumbrance of any such property of any such company or
person, or of any of its rolling stock or personal property,
created or suffered by any such company, or party, after
the time when any street or part thereof, upon which any
such street-railway shall have been laid, shall have been
ordered paved, repaved, macadamized, or repaired, shall be
made or suffered, except subject to the actual or prospect-
ive lien of such special taxes, whether actually levied or
not if such levy be in contemplation.' Compiled Statutes
1899, ch. 13a, art. 1, sec. 79. The lien on the property as-
sessed is only by virtue of the statute.  The legislature has,
for reasons no doubt appearing to it as sufficient and satis-
factory, enacted that the tax lien should be prior if the
improvement is in contemplation, whether the taxes are
actually levied or not.   By the language used it is con-
templated that if the improvement has been projected and
is under way, that is, if the street 'shall have been ordered
paved,' no lien shall be created except subject to the pros-

pective lien. The language of the statute excludes the idea that under all circumstances the lien for special assess-. ments shall be superior to all other liens. If force and effect be given to the language of the statute, and the words used be taken in their ordinary and natural meaning, the conclusion is irresistible, that an incumbrance placed on the property before street improvements are projected is prior to a lien for special assessments levied thereafter for such improvement. It is not for us to engage in judicial legislation or trench on the clearly expressed meaning of the language used by the legislature in its enactment of law. The legislature having determined under what circumstances special assessments levied on property of street-railway companies for street improvements should be a first lien on the property assessed, it follows, under any recognized rule of construction, that valid liens on the property before any improvements are made or contemplated within the meaning of the section can not be subordinated to the statutory lien. We observe no escape from this conclusion. Counsel for the city insists that the general provisions, as to assessments levied generally being liens on the property assessed prior to all others, should likewise govern in the case at bar. We can not so construe the law without ignoring entirely the language quoted, and this we are not at liberty to do. Were it not for such language, and relying only on the general provisions with reference to special assessments, we could readily agree with counsel in this regard. The principle of subordination of liens for taxes to liens created by contract has been also recognized by the legislature in the act providing that a general lien for taxes shall exist in favor of the state on all the personal property of the tax debtor from and after the time the assessment books are placed in the hands of the county treasurer or tax collector for collection; and yet it is held that a mortgage in good faith executed on such property prior thereto is a superior lien to that of the lien for taxes. *Reynolds v. Fisher,* 43 Nebr., 172; *Farmers' Loan & Trust Co. v. Memminger,* 48 Nebr., 17;

*Chamberlain Banking House v. Woolsey,* 60 Nebr., 516."
The foregoing is the law of this case, and this question is
no longer an open one in this court.

Complaint is made because the court found that the
paving taxes were not a lien on the personal property of
the street-railway company.  Section 77 of chapter 11 of
the Session Laws of 1887 which creates the lien, reads as
follows:  "Special taxes for the purpose of paying the costs
of any such paving, repaving, macadamizing or repairing
of any such street-railway may be levied upon the track
including the ties, iron, road-bed and right of way, side-
tracks, and appurtenances, including buildings, and real
estate belonging to any such company or person, and
used for the purpose of such street-railway business, all
as one property, or upon such part of such tracks, appur-
tenances, and property as may be within the district paved,
repaved, macadamized, or repaired, or any part thereof,
and shall be a lien upon the property upon which levied
from the time of the levy until satisfied."  And it is
claimed that the word "appurtenances," used therein,
should be construed to mean the personal property, in-
cluding the rolling stock, of the defendant company.  It
must be conceded that the word, in its ordinary sense, does
not mean personal property; the term "appurtenance"
signifies something pertaining to another thing as prin-
cipal, and which passes as incident to the principal thing,
which is different, but of a congruous nature.  Thus a
deed conveying land and its appurtenances conveys only
such things in the nature of fixtures as are appurtenant
to the land itself.  It does not convey the personal prop-
erty or effects of the grantor, although they are situated
upon the land at the time the conveyance takes effect.  It
is insisted that the word "appurtenances," as used in the
statute in this case, means personal property, because in
the same act, speaking of a mortgage given by a street-
railway company, the language of the statute is that "no
mortgage, conveyance, pledge, transfer, or incumbrance
of any such property of any such company, or person, or of

any of its rolling stock or personal property, created or suffered by any such company or party, after the time when any street or part thereof, upon which any such street-railway shall have been laid, shall have been ordered paved, repaved, macadamized or repaired, shall be made or suffered, except subject to the actual or prospective lien of such special taxes, whether actually levied or not, if such levy be in contemplation."* We do not understand that this in any way extends the lien of the special taxes as defined and described in the statute; or that the legislature intended that it should have that effect. The same section provides that the treasurer shall have the power and authority to seize any personal property belonging to the street-railway company for the satisfaction of such taxes, when delinquent, and to advertise and sell the same, in the same manner as constables are authorized to sell property upon execution. The evident intention was to permit such seizure and sale, notwithstanding the personal property was mortgaged, unless the mortgage became a lien thereon before the assessments were actually made or were in contemplation by the city authorities. It has often been held that the words "with the appurtenances" can not enlarge the rights of the parties or enlarge the scope of the deed. *Huttemeier v. Albro,* 18 N. Y., 48; *Frey v. Drahos,* 6 Nebr., 1, 5, 29 Am. Rep., 353. Again, a lien upon personal property would be ineffectual. Such property is transitory in its nature, and is subject to change. In fact, the evidence contained in the bill of exceptions in this case discloses that of the many cars which were owned by the street-railway company at the time the special assessments were made have been abandoned, and but very few of them are in use in any form at this time. It is, therefore, obvious to us that the legislature never intended that the lien for special assessments for paving taxes should extend to and cover the personal property of the street-railway company. The trial court was therefore right in the construction it placed upon the statute in question.

---

* Session Laws, 1887, ch. 11, sec. 77.

The plaintiff in error contends that the court erred in his findings of the amount due the city. It appears that the trial court took as a basis for computation the amounts of the original assessments and computed the interest thereon at the rate of one per cent. per month from the date they became delinquent, plus a penalty of five per cent. on all of such delinquent instalments. It is contended by counsel for the city that the court should have determined the amount due by computing interest at six per cent. per annum from the date of levy until the taxes were delinquent, and thereafter a penalty of one per cent. the first month, two per cent. the second month, and so on, to wit, at the rate of twenty-four per cent. per annum up to the time of the trial; and as authority for such contention cites us to section 69, chapter 13a, of the Compiled Statutes of 1891. An examination convinces us that the statute is incomplete; in other words, something is left out of the closing part thereof. In its present condition it is impossible to determine its meaning with any degree of certainty. In section 62 of the same chapter we find the following: "Special taxes and assessments shall, except deferred yearly instalments for paving purposes, be deemed delinquent if not paid in fifty days after the passage and approval of the ordinances levying the same in each case, and a penalty of five per cent., together with interest at the rate of one per cent. a month, shall be paid on all delinquent special taxes or assessments from the time the same shall become delinquent." If the plaintiff's theory is accepted, it is impossible to harmonize these two sections, and we believe that portion of section 62, above quoted, should be adopted as the rule of computation in this case. In fact, that matter was before us upon the former hearing of this case, and in considering it we held: "Under the statutes, taxes levied as special assessments in cities of the first class draw interest at the rate of twelve per cent. per annum from the time of delinquency, and a decree enforcing a tax lien arising therefrom will draw interest at the same rate after rendition." *Lincoln*

*St. R. Co. v. City of Lincoln,* 61 Nebr., 109, 113. Mr. Justice HOLCOMB, in the body of the opinion, says (p. 150): "Complaint is made because interest was computed on the different levies for special assessments at the rate of twelve per cent. per annum and the judgment rendered decreed to draw interest at the same rate. We think this action was in strict accord with the provisions of the statutes and in conformity with the well settled rule of this and other jurisdictions with respect to the rate of interest allowed on delinquent taxes levied for either general revenue purposes or as special assessments. In cities of the class that plaintiff belongs to, the statutory provision is that all delinquent taxes, both general and special, shall draw interest at the rate of twelve per cent. per annum from the time they become delinquent." We think this is a correct solution of the question, and the same is hereby approved and followed. The trial court, in making the computation, having followed this rule, his finding of the amount due is approved and affirmed.

It is next contended by the city that the finding by the court which gives the defendant the Lincoln Street-Railway Company credit for $5,000 on account of a payment on the taxes which are a first lien on its lines, is erroneous, and is not sustained by the evidence. It appears that an attempt was made to compromise all of the matters in controversy in this suit; that it was agreed that the defendant the Lincoln Street-Railway Company should pay the city $65,000 in instalments, and the whole claim for special assessments upon the receipt of that amount should be canceled. On this agreement $5,000 was paid into the city treasury. The city was then enjoined by a taxpayer from carrying out the agreement. Under this condition of affairs, the defendant had the right either to withdraw this payment, or have it applied in satisfaction of the debt, as it might see fit to direct. It chose to have it applied in payment of a part of the special assessments, which this court had declared to be a lien on its property prior to the mortgage of the New York Security & Trust

Company, and directed the treasurer to so credit it. The direction, as shown by the evidence, was as follows (testimony of Mr. Humpe) :

Q. Mr. Humpe, do you remember whether or not any tender or deposit of money has been made by any of the defendants on any of the taxes involved in this litigation?

A. Yes, sir.

Q. What amount?

A. $5,000 paid.

Q. Paid to whom?

A. Paid to Mr. Aitken, city treasurer.

Q. I will ask you if you remember about when the decision of the supreme court was rendered in this case; the record of it being January 4, 1901. Do you remember that decision was made?

A. Yes, sir. I remember the fact.

Q. Well, what, if anything, did you do or say with reference to this command—with reference to this $5,000 payment to the city treasurer of Lincoln?

A. After the decision of the supreme court had been rendered, I asked to have the $5,000 applied on these districts which were covered by the decision of the supreme court, as being against the property owned by the Lincoln Traction Company.

Q. Prior to the giving of the mortgage?

A. Yes, sir.

Q. That is, the lien for taxes that existed prior to the giving of the mortgage that was foreclosed, and the Lincoln Traction Company made its purchase under?

A. Yes, sir.

"The debtor may, at or before the time of payment, prescribe the application of such payment, and it is the duty of the creditor to so apply it." 18 Am. & Eng. Ency. Law [1st ed.], 234.

"If the creditor receives money with a direction from the debtor to appropriate it to a particular debt, it must go to that debt, no matter what the creditor may say at the time; and an appropriation once made by the debtor can

not be changed by the creditor without the debtor's consent." 18 Am. & Eng. Ency. Law [1st ed.], 235; *Mayor of Alexandria v. Patten,* 4 Cranch [U. S.], 317, 2 L. Ed., 633; *Tayloe v. Sandiford,* 7 Wheat. [U. S.], 13, 5 L. Ed., 384.

The supreme court of Ohio, in the case of *Stewart v. Hopkins,* 30 Ohio St., 502, passing upon this question, says: "The creditor can not divert a payment so made by his debtor, from the appropriation made by him, upon mere equitable considerations, that do not amount to an agreement between the parties giving the creditor a right to appropriate the payment otherwise than directed by the debtor, though mere equitable considerations may control where the payment is made without designating its application." This rule is recognized and followed in this state in the case of *Life Ins. Clearing Co. v. Altschuler,* 55 Nebr., 341. The direction to the city treasurer, as shown by the evidence above quoted, was specific enough to require the city to credit the payment on the assessments which had been declared by this court to be a first lien on the defendant's lines of street-railway. We are unable to say that the finding of the court that this money should be so applied was clearly wrong, and, therefore, it should be sustained.

The trial court found that the remainder due on the assessments against the Rapid Transit Company was $37,-352.63, and gave the city a third lien on the property of the Lincoln Street-Railway Company, acquired by the traction company by the foreclosure proceedings in the federal court. Both parties complain of this part of the decree. The city excepts because it was not given a first lien on the property described in the first finding of facts, and in the first conclusion of law, and the traction company complains because the remainder due on account of said special taxes was not canceled by the decree. It appears that the city, by a cross-bill filed in an action pending in the federal court against the Home Street-Railway Company, which owned a portion of the original Rapid Transit lines of street-railway, obtained a decree giving it a first lien on

the Rapid Transit lines for the paving taxes assessed against that company, and a decree of foreclosure thereon; that said property was sold under the decree and was purchased by the city, and that it obtained title thereto by a master's deed, upon a confirmation of the sale; that the amount bid at the sale left a deficiency of the amount due as established by the decree herein. The city is certainly bound by the decree under which it obtained title to the property purchased. *Pope v. Benster,* 42 Nebr., 304, 47 Am. St. Rep., 703; *Denver City Irrigation & Water Power Co. v. Middaugh,* 12 Colo., 434, 13 Am. St. Rep., 234; *Canal & Banking Co. v. Lizardi,* 20 La. Ann., 285, 290. And for that reason it is contended by the defendant that, the city having obtained title to the former Rapid Transit lines, such proceedings operated to completely extinguish its claim and lien for the remainder of the Rapid Transit paving assessments. We can not assent to this proposition. The sale extinguished the lien on the property purchased by the city under the decree, but the city was still entitled to recover the amount of the deficiency. In the first instance it was entitled to a first lien upon the Rapid Transit property. The lien having been extinguished by the sale and purchase thereof, it was entitled to a third lien on the other lines of the consolidated company obtained by its purchase at the master's sale. It was not entitled to a personal judgment against the old Lincoln Street-Railway Company or the Traction Company, the present owner of the consolidated lines, therefor. In our former opinion in this case, Mr. Justice HOLCOMB, in determining this question, used the following language (p. 157): "Can the lien of the city for special assessments levied on the property of the Rapid Transit Company extend to all the property of the new company after consolidation prior to and in disregard of the lien theretofore created on the property of the original company by virtue of the said mortgage? By section 8, article 7, chapter 72, Compiled Statutes, 1899,* it is specially provided, with

---

\* Cobbey's Annotated Statutes, sec. 10085.

respect to street-railway corporations being merged into a new corporation by consolidation, 'that all the rights of creditors and all liens upon the property of either of said corporations shall be and hereby are preserved unimpaired, and the respective corporations shall continue to exist so far as may be necessary to enforce the same.' At the time of the consolidation the trust company possessed a lien on the property of the defendant company to the extent of the sum due on the bonds sold and secured by the mortgage held by it as trustee. The city held a lien against the same property for special assessments levied, and also a similar lien on the property of the Rapid Transit Company consolidated with it. The liens were conflicting, and to retain each unimpaired necessitated a finding of the several sums due against the respective properties and the priority of each. We do not understand upon what principle of law the lien existing against the property of the Rapid Transit Company can be made a prior lien upon the property mortgaged to the defendant trust company. This, it seems to us, would be an impairment of the lien to that extent in violation of the statutory provisions quoted, as well as the fundamental principle against the impairment of the obligations of a contract without the consent of the parties thereto. We do not think it a sufficient answer to say that the value of the property acquired by consolidation from the Rapid Transit Company exceeded the tax lien with which it was burdened, and which therefore might be spread over the entire property without prejudice to the interest of the mortgagee. Of the value of each of the properties we are not fully informed by the record. We are, however, satisfied that the defendant trust company may rightfully insist that the property on which it holds a lien shall not be charged, beyond the terms of its contract, with a lien not existing when its rights thereto attached. As between conflicting equities and lien-holders the rule is settled and well-grounded in principles of equity that the liens follow the property into the consolidated company, and one can not

take precedence, by reason of such consolidation, over other liens already existing. The lien of the defendant trust company on all the property of the street-railway company before consolidation can not be subordinated to the lien of the levy for special assessments on other property afterwards acquired by consolidation." It follows that the lien for the Rapid Transit taxes attached to the other lines owned by the consolidated company when the consolidation with the Rapid Transit lines took place, which was at a time subsequent to the giving of the mortgages to the New York Security & Trust Company and the New York Security & Indemnity Company. The amount still due on the Rapid Transit paving taxes is, therefore, a third lien on the lines of the consolidated company. This was the holding of the trial court, and was strictly in accordance with our former views on this question, to which we still adhere.

It is contended by the defendant companies, on their appeal herein, that the court erred in giving the city a first lien for the paving taxes in paving districts 21 and 22. The trial court found that these assessments were in contemplation when the mortgage was given to the New York Security & Trust Company. The statute creating the lien, as above stated, expressly makes it superior to that of the mortgage, and the court did not err in so holding.

It is further claimed by defendants that a part of the tax is void because it includes the cost of paving one foot outside of the rails of the street-car lines. It is sufficient to say that an examination of the question discloses that at the time this paving was done the statute, in express terms, provided that the company should pave one foot outside of its rails. Session Laws, 1887, ch. 11, sec. 76. Therefore it can not be claimed that the assessment objected to was void.

It is contended on the part of the city that the court erred in not giving it a personal judgment for a certain part of the taxes. It is sufficient to say that no such judgment was asked for in the pleadings. Again, the trac-

tion company, by its purchase of the property under the decree foreclosing the mortgages, did not personally assume the debt. Therefore no personal judgment can be rendered against it. No judgment is asked for against the old Lincoln Street-Railway Company, and it does not appear that if one was rendered it could be enforced or collected. Again, it was within the discretion of the court to defer any action looking to the rendition of a personal judgment until after the execution of the decree by sale of the property, when the amount of the deficiency, if any, as shown by the return, can be determined, and upon a proper showing a judgment can be rendered against those personally liable therefor. The city, therefore, was not injured by the refusal of the court to render a personal judgment, and has no cause of complaint so far as that question is concerned.

After a laborious reading of the record and bill of exceptions, and a careful examination of all of the matters involved herein, we find that the trial was fairly conducted; that the findings and the decree of the trial court are sustained by the evidence and are in substantial accord with the law of the case as set forth in our former opinion. We therefore recommend that the decree of the district court be, in all things, affirmed.

OLDHAM and POUND, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment and decree of the district court is

AFFIRMED.