**LONGHART SUPPLY CO. v. KEYSTONE PIPE & SUPPLY CO.**

**No. 12251.**

Court of Civil Appeals of Texas. Fort Worth.

Jan. 18, 1930.

Rehearing Denied Feb. 22, 1930.

Fischer & Fischer, of Wichita Falls, for plaintiff in error.

Slay & Simon, Hampden Spiller, and Cecil Rotsch, all of Fort Worth, for defendant in error.

CONNER, C. J.

The defendant in error, Keystone Pipe & Supply Company, hereinafter referred to for convenience as the plaintiff, sued the plaintiff in error, the Longhart Supply Company, hereinafter referred to as the defendant, to recover damages for the conversion of a standard oil drilling rig and its attachments. The facts are that one C. W. Whitehead owned and was using the rig in controversy in drilling an oil well on a section of land in Wilbarger county, upon which he had an oil and gas lease. While so owning and using the rig, the defendant sold and delivered to him, during April or May, 1926, certain iron casing, for which Whitehead failed to pay, but to secure which the defendant in due form and time filed with the county clerk of Wilbarger county, on July 31, 1926, an itemized and verified statement of account, claiming a lien on the leasehold estate, the buildings, appurtenances, and fixtures. Later the defendant instituted suit against Whitehead in the district court of Wilbarger county wherein on March 21, 1927, an agreed judgment was entered in favor of the defendant for certain property, including the rig in question, under which judgment the defendant took possession and sold the rig.

Prior to the suit and proceedings therein last mentioned, however, Whitehead, on June 20, 1926, sold the rig to the plaintiff, executing a bill of sale therefor which was duly recorded. The plaintiff was neither a party to, nor had notice of, the suit of the defendant against Whitehead, nor did the defendant

have notice of Whitehead's sale of the rig to the plaintiff other than such as is to be imputed by the record of the bill of sale.

The case was tried by the court without a jury, and resulted in a judgment in favor of the plaintiff, Keystone Pipe & Supply Company, for $500, from which judgment the defendant Longhart Supply Company has duly prosecuted the present writ of error.

■ The regularity and general effect of the steps taken by the defendant in fixing its alleged materialman's lien is not questioned, and it is well settled that, when the formalities required in fixing such a lien have been complied with, it relates back to the inception of the lien, which in this case would be the date of the sale of the iron casing to Whitehead prior to May 20, 1926. Keating Implement & M. Co. v. Marshall Elec. L. & P. Co., 74 Tex. 605, 12 S. W. 489.

What, then, must be said of the scope and effect of the defendant's materialman's lien? If the drilling rig is to be included within the other property upon which the lien rested, the plaintiff, Keystone Pipe & Supply Company, must lose, notwithstanding it was an innocent purchaser of the rig without notice of the lien, and even though the lien was not fixed until after the purchase.

The lien claimed is statutory, and, if it can be said to attach to the rig in controversy at all, authority therefor must be found either in the Constitution or in the statutes relating to the subject. The pertinent article of the Constitution is article 16, § 37, which reads as follows: "Mechanics, artisans and materialmen, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

The statute which controls was enacted in February, 1917 (Acts 35th Leg., c. 17, § 1), and is to be found in the 1918 Supplement of Vernon's Ann. Civil Statutes, art. 5639a, which was carried forward in the revision of 1925, word for word, as article 5473. It reads as follows:

"Any person, corporation, firm, association, partnership, materialman, artisan, laborer or mechanic, who shall, under contract, express or implied, with the owner of any land, mine or quarry, or the owner of any gas, oil or mineral leasehold interest in land, or the owner of any gas pipe line or oil pipe line, or owner of any oil or gas pipe line right of way, or with the trustee, agent or receiver of any such owner, perform labor or furnish material, machinery or supplies, used in digging, drilling, torpedoing, operating, completing, maintaining or repairing any such oil or gas well, water well, mine or quarry, or oil or gas pipe line, shall have a lien on the whole of such land or leasehold interest therein, or oil pipe line or gas pipe line, including the right of way for same, or lease for oil and gas purposes, the buildings and appurtenances, and upon the materials and supplies so furnished, and upon said oil well, gas well, water well, oil or gas pipe line, mine or quarry for which the same are furnished, and upon all of the other oil wells, gas wells, buildings and appurtenances, including pipe line, leasehold interest, and land used in operating for oil, gas and other minerals, upon such leasehold or land or pipe line and the right of way therefor, for which said material and supplies were furnished or labor performed. Provided, that if labor, supplies, machinery, or material is furnished to a leaseholder, the lien hereby created shall not attach to the underlying fee title to the land."

■ It seems quite clear that no warrant for the lien under consideration on the rig in question is to be found in the terms of the constitutional provision, for the rig is not a building, nor was it made or repaired or labor thereon performed or material furnished therefor by the defendant. Nor do we think authority for the lien claimed on the rig is to be found in the statute, for, as already noted, defendant neither furnished material for nor labored upon the rig in question, nor do we think it can be said that the rig was "appurtenant" to the lease or to the pipe line supplies furnished Whitehead by the defendant. The property upon which the lien rested, as indicated in the terms of the article, was "land * * * leasehold interest therein, * * * oil pipe line or gas pipe line, * * * buildings and appurtenances, * * * materials and supplies so furnished, and * * * oil well, gas well, water well, oil or gas pipe line, mine or quarry for which the same are furnished," etc. No form of the property mentioned can properly be construed, we think, to include the rig. The only terms giving color to the contention that the lien included the rig is that it was an "appurtenance" to the lease or to the material furnished by defendant. The term "appurtenance," we think, relates to such land, building, or material, if any, that has been furnished or upon which labor has been done. We find in 1 Words and Phrases, Second Series, page 261, the following definitions of an appurtenance, to wit: "An 'appurtenance' is a thing belonging to and going with the transfer of a principal thing; used with, dependent upon the thing, and essential to it."

Another: "The word 'appurtenant' means attached to, or belonging to, and in law the term 'appurtenance' usually means something appertaining to another thing as principal, and passing as an incident to such principal."

In vol. 4 Corpus Juris, p. 1470, under the title "Appurtenances," it is said: "In its ordinary sense the term does not embrace person-

al property but it has a popular meaning that may be applied to personalty."

In a footnote to that statement it is said: "A deed conveying land and its appurtenances conveys only such things in the nature of fixtures as are appurtenant to the land itself. It does not convey the personal property or effects of the grantor, although they are situated upon the land at the time the conveyance takes effect."

In support of this statement, the case of Lincoln v. Lincoln Street Ry. Co., 67 Neb. 469, 487, 93 N. W. 766, is cited.

We think it may be said to be judicially known that a drilling rig is only erected to be used temporarily during actual drilling, and that it is not so attached to the land as to become a fixture, and therefore does not become a part of the realty. In Thuss on Texas Oil & Gas, page 312, § 216, it is said:

"An oil well is not a building or article made, and thus does not come within the constitutional provision relating to liens; consequently, the lien must be measured by the statute, and has no greater force than given by its provisions. * * * The lien for labor performed in the drilling of a well attaches to the mineral estate (leasehold interest described in statute) and its appurtenances; but a derrick, engine, pump, rotary, casing, drill joint, swivel, crown block, traveling block, line shaft and drill are not appurtenances, and no lien attaches to them"—citing Texas cases.

Moreover, the statute has been construed by several of our courts. The first case is that of Williams v. Magouirk, 235 S. W. 640, 641, by the Dallas Court of Civil Appeals. That was a suit brought in Wood county to foreclose an oil laborer's lien on certain property in wood county, including "one 96-foot derrick * * * and all other accessories and appurtenances to the well rig situated on the J. C. Adrian place * * * and one derrick situated on the Scott Thompson place." The defendant filed a plea of privilege to move the case to the county of their residence, Collin county, and the Court of Civil Appeals held that it should be sustained for the reason that the statute did not give the plaintiff a lien on the drilling rig and other property in Wood county, and that therefore it was not a suit to foreclose a lien in Wood county so as to give venue. In that case the court, in deciding the very issue that is to be decided in this case, said:

"Appellee contends that, notwithstanding the fact that he did not furnish any of the material, machinery, or supplies described in his petition and on which he asserts a lien by virtue of the act under discussion, nevertheless he has a lien on all of said property because same constitutes 'appurtenances' for the purpose of drilling an oil well. * * *

"We are of the opinion that said act does provide for such lien on 'appurtenances' to an oil well, gas well, building, pipe line, leasehold interest, and land used in operating for oil, gas, and other minerals, for labor performed under proper contract of employment as provided for by said section 1 of said act, but we are unable to hold from the authorities examined by us that the material, machinery, and supplies described in appellee's petition constitute appurtenances within the meaning of the law. * * *

"In the case of Bloom v. West, 3 Colo. App. 212, 32 P. 846, it is held:

"'Technically, property tangible and corporeal, capable of sale or transfer, and of use in any other place cannot be regarded as appurtenant to land.' * * *

"We therefore hold that no lien existed at the time of the filing of suit by appellee or now exists on the property described in his petition."

The next case that involved this issue was that of McClellan v. Haley, 237 S. W. 627, 628, in which the San Antonio Court of Civil Appeals made the same holding. In that case the plaintiff McClellan brought suit under the statute to foreclose a laborer's lien on "one standard drilling rig complete" and other property. The court held that the statute did not give a lien on the rig; and it said:

"It cannot be successfully contended that the statute attempted to authorize the creation of a lien upon property such as named in the suit. * * * The lien attempted to be fixed is upon the drilling rig, and describes the several pieces of property as casing in well; casing on rack at well; casing on ground at well; it is not germane to any described article named in the statute that comes within that designation. * * * But they are not entitled under the terms of the statute to a lien upon property described, because the described property is excluded from, and not named in the statute, nor embraced within its terms. * * *

"Such liens are creatures of the statute, whose terms are to be strictly construed and will not, by any theory, be enlarged to embrace matters beyond its letter. It may, as stated by plaintiffs in error, have been the legislative intent to broaden the lien so as to reach all cases such as is under consideration, but it did not do so."

The court concluded its opinion by saying that:

"Since writing the above opinion our attention is called to the case of Williams et al. v. Magouirk [Tex. Civ. App.] 235 S. W. 640, Advance Sheets, just delivered in our mail.

"A careful examination of the record and a consideration of the statute, in the light of the facts in this case, convince us that plaintiffs in error have acquired no lien upon

the property described, and the judgment of the trial court is affirmed."

The Commission of Appeals, section A, passed on the question here involved in the case of Security Banking & Investment Company v. Flanagan, 254 S. W. 761, 762, in which it held that the statute did not give a lien on an oil rig. That was a case in which the plaintiff brought suit under the statute to foreclose an oil materialman's lien on certain materials, consisting of a rig, tools, and equipment. The trial court gave judgment for foreclosure, and the Texarkana Court of Civil Appeals, in Security Banking & Investment Company v. Flanagan, 241 S. W. 702, affirmed the trial court's decision. But the case, because of the conflict in the decisions, was taken to the Supreme Court on writ of error, and the Commission of Appeals, Section A, reformed the judgment so as to deny foreclosure of the lien. In the opinion it was said:

"* * * It is contended that * * * the Court of Civil Appeals in affirming this judgment held differently from a prior decision of the Court of Civil Appeals of the Fifth Supreme Judicial District in the case of Williams v. Magouirk, 235 S. W. 640, and from the Court of Civil Appeals of the Fourth Supreme Judicial District in the case of McClellan v. Haley, 237 S. W. 627."

The Commission of Appeals then cited and approved Williams v. Magouirk and McClellan v. Haley, and on their authority recommended that foreclosure of the lien be denied. In accordance with that recommendation, the following order was made by Chief Justice Cureton: "Judgments of the Court of Civil Appeals and the district court both reformed so as to deny foreclosure of lien, and in all other respects both judgments are affirmed."

Later the question was directly presented to the Supreme Court in Wagner Supply Company v. Bateman, 18 S.W.(2d) 1052, 1053. In that case J. C. Roberts and others owned an oil and gas lease in Stephens county, and employed one Bateman to finish an uncompleted well. Bateman was to receive a one-fourth interest in the lease and its products, and, in addition, was to be paid cash for a certain portion of his labor and shutdown time. A suit was instituted by J. C. Roberts and others against Bateman on June 9, 1921, in which Bateman, by a cross-bill, claimed an indebtedness alleged to have been incurred under the contract of drilling the well and caring for the property. He impleaded the Wagner Supply Company and others, who it was stated were asserting liens on the lease and personal property, alleging that his lien under the drilling contract as a laborer was superior to the lien held by the Wagner Supply Company. The Wagner Supply Company answered this cross-action and set up a claim for material furnished, alleged the execution of a chattel mortgage by J. C. Roberts and others on certain personal property used in connection with the well, asserted a materialman's lien also on the lease and on the personalty furnished by it and other personal property used in connection with the well, and prayed for judgment in the amount of its debt and the establishment of its liens. It also claimed that its liens were superior to any lien that Bateman might have, and that its claim had priority over the expenses of the receivership. The trial court rendered judgment for both Bateman and the supply company, awarding to the former a mechanic's lien, and to the latter a materialman's lien on the lease and personal property used in connection with the well; but declared that these liens were co-ordinate and of equal dignity.

It appears that on January 7, 1921, Withers and Roberts had purchased a large amount of well casing from the Wagner Supply Company, and to secure the purchase price had executed to that company a chattel mortgage on 850 feet of 12½-inch casing and 1,650 feet of 10-inch casing. The mortgage declared that the material was to be placed on the tract of land upon which Bateman drilled. The mortgage also covered future advances or deliveries of property of like character to that described in the mortgage, under which the Wagner Supply Company not only sold and delivered to Withers and Roberts the 12½-inch and 10-inch casing specifically described in the mortgage, but delivered a large amount of other casing and supplies, upon which it also claimed a lien under this instrument.

The Supreme Court said: "We think the chattel mortgage was sufficient to cover such future deliveries or advances as were within the descriptive clause of the mortgage, and at the time of this trial evidenced a valid and subsisting lien." Citing cases.

The court further said: "Bateman claimed a lien on this property under article 5639a, Revised Statutes, Vernon's Complete Texas Statutes 1920, because, he contended, that as a laborer and mechanic, under his contract to drill the well, he had a lien on the material used in and appurtenant to the well. We do not agree with this contention. The material furnished by the Wagner Supply Company was not supplied by Bateman, and the mechanic's or laborer's lien under the statute invoked did not apply in his behalf to material as such furnished by the Wagner Supply Company"—citing with approval the case of Security Banking & Investment Company v. Flanagan, by the Commission of Appeals, 254 S. W. 761.

The court, however, in the further course of its opinion, stated that: "The Wagner Supply Company also claimed, and had, a materialman's lien on the derrick and other material not supplied by it, and on the well and the lease. We think this lien also was supe-

rior to the laborer's lien claimed by Bateman, because of the relationship of Bateman to the joint enterprise."

It is upon the pronouncement last quoted that the plaintiff in error in this case most strongly relies. Defendant in error suggests that this holding was not necessary to the final conclusion of the court. This may be true, but, whether so or not, it is the wording of our court of last resort, and as such entitled to due consideration. While laborers and materialmen are placed within the same category of the benefits conferred by the statute, a reading of the opinion will disclose that the court held Bateman to be a partner with Roberts and others, and that the property of the partnership had been placed in the hands of a receiver, the partnership thus presumably being in course of dissolution, and the quoted pronouncement that the Wagner Supply Company had a materialman's lien on material not supplied by it was, as stated, "because of the relationship of Bateman to the joint enterprise," no reference in this connection being made to the statute. While, in the absence of full knowledge and consideration of circumstances in the mind of a writer, the meaning of a writing may not be declared with absolute certainty, we nevertheless venture to interpret the quoted pronouncement as based upon principles of equity. It is said in 17 R. C. L. bottom of page 605, par. 14, that: "Even in the absence of an express contract, a lien based upon the fundamental maxims of equity, may be implied and declared by a court of chancery out of general consideration of right and justice as applied to the relation of the parties and the circumstances of their dealings."

In the case of Panhandle National Bank v. Emery, 78 Tex. 498, 15 S. W. 23, our Supreme Court held, quoting from the headnote, that: "Upon the dissolution of a corporation there is an equitable lien upon its property in the hands of the stockholders, or of persons taking with notice, in favor of the creditors of such corporation." See, also, Moore et al. v. Steele et al., 67 Tex. 436, 3 S. W. 448.

In Simpkins on Equity, p. 350, it is said, among other things, that: "A partner, who has paid the debts of a firm, has an equitable lien on the assets."

To the same effect is the decision of the Supreme Court of the United States in Case v. Beauregard, 99 U. S. 119, 124, 25 L. Ed. bottom page 370 et seq. It was there said by the Supreme Court that: "No doubt the effects of a partnership belong to it so long as it continues in existence, and not to the individuals who compose it. The right of each partner extends only to a share of what may remain after payment of the debts of the firm and the settlement of its accounts. Growing out of this right, or rather included in it, is the right to have the partnership property applied to the payment of the partnership debts in preference to those of any individual partner. This is an equity the partners have as between themselves, and in certain circumstances it inures to the benefit of the creditors of the firm. The latter are said to have a privilege or preference, sometimes loosely denominated a lien, to have the debts due to them paid out of the assets of a firm in course of liquidation, to the exclusion of the creditors of its several members. Their equity, however, is a derivative one. It is not held or enforcible in their own right. It is practically a subrogation to the equity of the individual partner, to be made effective only through him. Hence, if he is not in a condition to enforce it, the creditors of the firm cannot be. Rice v. Barnard, 20 Vt. 479 [50 Am. Dec. 54]; Appeal of York County Bank, 32 Pa. 446. But so long as the equity of the partner remains in him, so long as he retains an interest in the firm assets, as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity, and enforce, through it, the application of those assets primarily to payment of the debts due them, whenever the property comes under its administration."

Applying the principles thus indicated, we conclude that the quoted portion of the opinion of the Supreme Court in Wagner Supply Company v. Bateman, upon which plaintiff in error so strongly relies, should not be held to be in conflict with the decision in the case of Security Banking & Investment Company v. Flanagan, nor out of harmony with what was said in the opinion in the Wagner Supply Company v. Bateman Case expressly based upon the Flanagan Case, for, under the circumstances indicated in the opinion, the Wagner Supply Company had a creditor's materialman's lien as against Bateman.

Judgment affirmed.