**KNOX et al. v. MAURER–KREBS OIL CO. et al.**

**No. 2349.**

Court of Civil Appeals of Texas. Eastland.

April 9, 1943.

Rehearing Denied May 28, 1943.

F. D. Wright and Eugene Lankford, both of Cisco, for appellants.

Turner & Seaberry, of Eastland, for appellees.

LESLIE, Chief Justice.

C. C. Ledford and Dee Barr, partners, filed this suit March 18, 1942, against Maurer-Krebs Oil Company, an Arizona corporation, to recover $6,850 alleged to be due them for materials furnished and labor performed in drilling and developing an oil well and to foreclose an alleged statutory lien in their favor on "the lease and equipment." They alleged the equipment embraced an oil well pump, its accessories and pumping rods. This part of the equipment will be spoken of as the pump or pumping unit, which was apparently in possession of a receiver of the company at the time the appellee, Valley National Bank, filed its plea of intervention and sought to recover possession of the pump.

At a trial before the court without a jury, judgment was rendered in favor of plaintiffs against the Maurer-Krebs Oil Company for the indebtedness of $6,850 and declaring a lien in their favor upon the lease and equipment (subject to the materialman's liens of J. A. Rapp and Zero Hour Bomb Company), excepting, however, the pumping unit which the court ordered turned over to the intervenor, Valley National Bank, under the terms of a chattel mortgage which the Bank alleged gave it a prior right to the possession of the same.

The receiver, Knox, and plaintiffs, Ledford and Barr, resisted the Bank's claim and they and two other intervenors appeal.

Knox was appointed receiver for the Oil Company after it became insolvent (about June 4, 1941) and as receiver intervened, excepting to the Bank's plea in intervention and challenged sufficiency of the chattel mortgage to create a lien on the ground of insufficient description of property, defective acknowledgment, not filed "forthwith", etc.

J. A. Rapp intervened, claiming an indebtedness of $337.50 for shooting the well under a contract with plaintiffs, Ledford and Barr, and which indebtedness he alleged was secured by a statutory lien on the "property * * * belonging to Maurer-Krebs Oil Company on said land * * *."

The Zero Hour Bomb Company intervened, claiming an indebtedness of $107 for material for shooting the well furnished by it under a contract with plaintiffs.

In substance this litigation grows out of the following facts:

The Oil Company, owning a 20 acre oil and gas lease out of A. J. Jackson lands, Eastland County, contracted with plaintiffs to drill an oil well thereon and agreed to compensate them on a pay-as-you-go basis. As drilling proceeded, the Company was unable to meet the accrued expenses ($1,-592) and negotiations between plaintiffs and the Company resulted in a new contract of May 30, 1941, by which the Company agreed that if plaintiffs would finish the well, furnish certain equipment, shoot the well, and superintend the production, the Company would pay them $6,850. To secure payment of such sum, the Company assigned to plaintiffs all oil runs until said sum was paid, at which time plaintiffs were "to execute * * * re-assignment or release of this assignment * * *" to Maurer-Krebs Oil Company.

As part of that contract the Company agreed that at proper time it would install a pump on the well and furnish pumper or caretaker. The well was finished and shot by plaintiffs, making a small well. Plaintiffs notified the Company the well would have to be pumped and urged installation of pumping equipment as soon as possible because water was coming into the well and would destroy it. Some delay intervened before the installation of the pump under the circumstances hereinafter detailed.

Soon after the filing of this suit against the Maurer-Krebs Oil Company, the Valley National Bank of Arizona, appellee herein, intervened, seeking to recover possession of the pumping unit. Its plea of intervention was on the ground that it held a prior chattel mortgage lien against the pump in that on August 30, 1941, it loaned Dudley T. Fournier, G. H. Lawrence and John M. Kellogg, $1,571.25, evidenced by a

monthly installment note secured by said chattel mortgage. The note and mortgage provided that in case of default in payment of any installment the holder thereof was authorized to accelerate all installments and take possession of the pump and sell same at public or private sale, with or without notice. Default in payment of note having occurred, the Bank declared the whole obligation due and demanded possession of pump from the Receiver, who refused to surrender same. The appellee Bank contends that in its transaction with Fournier, Lawrence and Kellogg, they were acting as individuals and not in any representative or official capacity for the Maurer-Krebs Oil Company, and that they were so acting in a subsequent arrangement (9–4–41) in which they (through their agent, Tribolet) leased said pump to the Maurer-Krebs Company for the purpose of pumping the well.

In substance, the plaintiffs' theory of the case is that the "lease and its equipment" (embracing pump) belonged to said Maurer-Krebs Oil Company and was, therefore, subject to a statutory lien in their favor for labor, materials, etc., performed and furnished by them in the drilling and completion of said well.

Stated somewhat differently, appellants' main contention seems to be that since Maurer-Krebs Oil Company contracted to furnish and install the pumping equipment on said well for the plaintiffs' use in the operation of the lease "and the Executive Vice-President, A. A. Tribolet, acting as the company's general agent in Texas, having bought, paid for and installed said pumping equipment on said pumping equipment on said lease pursuant to said contract on August 29, 1941, the plaintiffs (Appellants) had a lien on the lease and all the equipment thereon for what was due them under said contract, superior to any chattel mortgage lien made thereon after that by anyone without plaintiffs' knowledge or consent."

The facts and circumstances on which the appellee Bank bases its claim of prior right of possession of the pump, will now be stated more in detail. The Maurer-Krebs Company being insolvent and unable to furnish a pump for the well, as found by the trial court, a pump was procured by certain individuals in the following manner:

That the Syntex Supply Company of Breckenridge, Texas, sold and delivered said pump to Tribolet by a bill of sale (8–27–41) and invoice (8–26–41) and received in payment therefor a draft (8–27–41) for $1,510 drawn on the Valley National Bank, payable to the order of said Supply Company.

That on September 4, 1941, Tribolet leased the pump to Maurer-Krebs Oil Company (of which he was Vice-President) for a period beginning August 30, 1941, and ending December 30, 1942. That said instrument provided that the expense of maintenance and caretaker were to be borne by the Company, which in turn obligated itself to pay for the use of the pump a consideration of $1,600, payable $100 per month beginning September 30, etc. The instrument recited the pump was then located on the Jackson lease, well No. 1, Eastland County, and was to be later returned, etc., to first party.

On the same date (September 4th) Tribolet by indorsement on the lease assigned all his rights thereunder to said Dudley T. Fournier, G. H. Lawrence and John M. Kellogg, stockholders and directors in said Oil Company. Tribolet, according to the findings of the trial court, had no personal interest in the transactions herein, but was in each instance acting as agent for the three named persons "executing the note" etc.

On the same date, September 4th, Tribolet also executed a formal bill of sale to the pump to said three parties. This recited a consideration of $10 and was recorded in Eastland County bill of sale records October 11, 1941.

Fournier, Lawrence and Kellogg proceeded to execute said chattel mortgage (carrying date August 30, 1941) to said Valley National Bank for $1,571.25, the price of said pump, payable $104.75 per month for 15 months, beginning September 30, 1941. The $1,571.25 was also evidenced by installment note executed to said Bank by said three parties on August 30th. As stated, this mortgage provided that if said consideration was not paid according to its terms and the note, the owner and holder thereof could at his option accelerate the maturity of said installments, declare said entire note due, taking possession of said pumping unit and selling same, etc.

The appellants attack the chattel mortgage and lease on the ground that it was a scheme to defraud them, originated by the officials of the Maurer-Krebs Oil Com-

pany. And, as stated, they also alleged that the mortgage was void because not filed forthwith and "not acknowledged according to law", and "not entitled to registration"; further, that the Bank knew of such fraud. In this connection it is further insisted that the acts and transactions of A. A. Tribolet were for and in behalf of the Oil Company and not as an agent of Fournier, Lawrence and Kellogg in their individual capacity. These various fact issues were resolved by the trial court against the appellant and in favor of the Bank. That court found: "That Intervenor Bank has a valid and subsisting lien against the equipment in question and is entitled to the possession of such property against the Receiver and all other parties."

 The court's findings of fact and conclusions of law are comprehensive and, in our judgment, find reasonable support in the testimony. The evidence is of such nature that this court would not be warranted in setting aside said findings.

By its first counter proposition, the Bank makes the contention that said mortgage accorded it the right to possession of the pump on a breach of the conditions therein, that such conditions were breached, entitling it to maintain an action to recover possession of the pump, not only from the mortgagors (Fournier, Lawrence and Kellogg), but from any person in whose hands it might find the chattel, including the receiver (Knox), who was only authorized to take over the assets of the defunct Maurer-Krebs Company, and who thereby acquired no better title to the pumping unit than was held by said corporation.

The proposition is fully supported by Clow Gasteam Radiator Company v. Hixson, Tex.Civ.App., 67 S.W.2d 619, Scarborough v. Connell, Tex.Civ.App., 84 S.W.2d 734, and numerous authorities cited therein, and the judgment awarding appellee Bank possession of the pump is correct. The receiver can acquire no greater interest than debtor had in property.

While we sustain the finding of the trial court that the pump at no time belonged to the Maurer-Krebs Oil Company, but to those dealing with the Bank in their individual capacity, nevertheless, if it be held that the pump did belong to Maurer-Krebs, then it must be held that at no time did any lien attach thereto in favor of contractors (plaintiffs), nor other creditors of said Company, since under the statutes and decisions construing the same said pump was not furnished by the plaintiffs and it is not an appurtenance to the lease within the meaning of said statute. Lee C. Moore & Co. v. Jarecki Mfg. Co., Tex.Civ.App., 82 S.W.2d 1002; Longhart Supply Company v. Keystone Pipe & Supply Co., Tex.Civ.App., 26 S.W.2d 389; and numerous authorities therein cited and discussed. These authorities deal with facts substantially the same as involved in the instant case, and they demonstrate that a pump is not such appurtenance, and there is no contention that the plaintiffs furnished the pump.

Our approval of the trial court's fact findings renders inapplicable the authorities cited by the appellants, and this opinion will not be lengthened by reference to or a discussion of the same.

For the reasons assigned, the judgment of the trial court is affirmed.